TRULINCS  18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

--------------------------------------------------------------------------------------------------------

FROM: 18035043
TO:
SUBJECT:
DATE: 10/05/2019 10:00:31 AM

Rasheed Ali Muhammad
P.O. Box 3000
White Deer, Pa. 17887
No. 19035-043
USP Allenwood

Honorable Judge

I am in dire need for immediate help. I have tried to contact my attorney of record for my direct appeal Peter Hickman Barrett. He and I are in a direct conflict of interest. Attorney Barrett has an oath and honor to uphold, thus far he has not operated under that oath concerning me. I have not received from him, his office, or law firm any information on how to contact him, or a letter stating that he would like to represent me.

From the start I have sent him a letter of introduction (June 18, 2019), he has never responded to any of my letters, emails, or the calls my family and friends have made to him concerning my appeal (if need I could furnish a copy of their call logs). I am at a crucial stage in the appeal process. I have given him more than the benefit of doubt, howbeit, he continues to disregard any of my attempts to contact him and work on my appeal.

The facility where I have been housed has been locked down numerous times since the appeal was granted. Even during the lock downs I sent attorney Barrett copies of my trial transcripts, discovery material, information from the PSI/PSR that would be helpful to my appeal and he has never made an attempt to discuss with me the merits of my arguments. I made him aware of the ruling case of Stephen Dominick McFadden 576, 135 S. Ct., 192 L. Ed. 2d 260, 2015, I also sent him information about Attorney Robin Elise Schulberg and how to contact her, she successfully defended Daniel James Stanford 823 F. 3d 814 2016 in his case as well as other cases.

I have asked him to contact other lawyers in the 4th, 5th and 11th circuit of attorneys that I have spoke to in the past that have won cases with controlled substance analogues. Each of these lawyers have informed me that I will win once I get to the direct appeal. Attorney Barrett has told my family members that it is harmless error in my case concern the McFadden decision, the same issue of knowledge requirement the Supreme Court ruled on. Mr. Barrett has never had any success in the court of appeals based on the cases that we have here available to us. I have researched his career from the time he was a AUSA to the time he started his own practice and many of the cases in the court of appeals from June 2011 up to August 2016.

I have hired other lawyers who have neglected to work with me, who disregarded everything I tried to share with them about my case. I was told through a third party that he believes the issues that I have presented are harmless. I have asked him to file a motion for release many times, I have made him aware that any motion that I file will be considered hybrid representation. I have an issue of liberty. I have tried to explain to him that my case started in December of 2012 in the paragraph 347 of the PSR it states 2011 9/03/2011 110 (grams) AM2201. The government said that AM2201 was a CSA at that time, however, in trial it was a controlled substance and they used that also to calculate the base offense of my sentence. These issues are not harmless. I explained to him that the government conceded that they thought I was Mohammed Posser all of the information in the indictment is based on Roslyn Chapman and Mohammed Posser the PSR mentions that conduct and it is the same that is included in the grand jury transcripts.

Most recently I was told by my parents that the government could not find the Jury Instructions. I provided him with the information on how to find them, where they are located in the trial transcripts, and the email that was sent on December 30, 2014 from Attorney Michael Crosby to the governments prosecutor Attorney Meynardie. Thus far I have been provided ineffective assistance of counsel, in all actuality I have not been provided an assistance of counsel and have thus far been prevent from due diligence in my appeal. I have fought for three years to restore my rights, in the past three months I have been slowly watching this attorney squander all of my efforts.

I am requesting a hearing to stop this attorney and to please assign me different counsel. This is not an attempt to delay the process, just a necessary step to provide a proper bite at the apple. There is no second chance. This level of representation falls beneath the quality of aid that should be provide for an effective and meaningful appeal. He has not filed any of the motions that I have asked him to, he has never tried to contact me or my family. We have to diligently pursue him and still get nothing. If needed I could furnish additional documents that I have sent to him

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Barrett, Peter; Bell, Akilah; Bell, Jennifer; Clement, Kenneth; Clement, Medgine; Davis, Angela; Davis, Ashley; Lopez,
Eileen; Muhammad, Atiya; Muhammad, Layla; Ramirez, Maggie; Rogers, Jihad; Silas, Audrey; West, Aisha; Wiggins, Lannay;
Youngblood, Ibn Amiri
SUBJECT: Harmless Error
DATE: 09/11/2019 09:28:22 AM

Attorney Petter Hickman Barrett,

  I asked the counselor if you had tried to contact me today, and he said that he had not received any calls from anyone. I was
speaking to my mother through email. She mentioned something about harmless error. I am wondering if you are under the
impression when it comes to my case that the jury instructions or the meas rea may be harmless. It's been over three months,
and you have not once made an attempt to contact me, or to work on this appeal. When I first started emailing you I thought
that I made it clear that i could have won trial had my attorney and I collectively worked on the case together.
  When it comes to controlled substance analogues the Supreme Court has made the knowledge requirement clear. A
defendant's knowledge that a controlled substance analogue (CSA) was indeed a CSA was an element necessary to secure a
conviction under 21 U.S.C.S. section 846 & 841 (b)(1)(c).
  If you have combed through the record then you are aware prior tot trial, I made an argument that Count One and the
Substantive Counts (2-8) that were considered CSA requires an instruction to the jury that they MUST find, as an element of the
CSA conspiracy, that Muhammad knew the substances were CSA's
  The district court concluded that suck knowledge was not required, but acknowledged that the question was the subject of a
circuit split (all of this is in the transcripts and the packets that I have sent you in the mail).  The (Supreme Court decision)
McFadden decision resolves the knowledge dispute in my case (as an element), holding that a defendant's knowledge that a
CSA was indeed a CSA is an element necessary to secure a conviction under 21 U.S.C. sections 846 & 841 (b)(1)(c). The
district court's failure to properly instruct the jury with respect to knowledge was NOT HARMLESS ERROR.
  To sustain a conviction of the substantive offense of possession under section 841, the government must prove knowing
possession of a controlled substance with intent to distribute it. See, e.g., United States v. Figueroa, 720 F.2d 1239, 1244 (11th
Cir. 1983). The government must therefore prove that the defendant knew "the substance [wa} a controlled substance."See,
e.g., United States v. Sanders, 668 F.3d 1298, 1309 (11th Cir. 2012) United States v. Gomez, 905 F. 2d 1513, 1514 (11th Cir.
1990)
  Recently in McFadden v. united States, the Supreme Court reemphasized this knowledge requirement. 576 U.S. _,_, 135 S.
Ct. 2298, 2302, 192 L. ed. 2d 260 (2015). Justice Thomas, writing for a near unanimous court, wrote that section 841 "requires
he [g]overnment to establish that the defendant knew he was dealing with a controlled substance." The court rejected the
government's proposed broader definition that the knowledge requirement would be met if the "defendant knew he was dealing
with an illegal or regulated substance under some law.
  While in trial the record clearly states that I had no knowledge of what a CSA was at the time, nor was there and proof that
such knowledge existed. As the Attorney of record I am requiring you to follow the clear guidance set forth in McFadden. Please
do not deviate from this argument and decision. This is a very simple case to win. I have already done all the work. My mother
stated as well that someone has or is misinforming me. I don't have anyone advising me, talking to me about my case, or
anything else. All I have is the cases that I have sent you, and the emails of those cases that I wish for you to follow. When it
comes to the controlled substance in the substantive counts, the McFadden case also applies. Please look up this case 861 F.
3d 1330 United States v. Louis July 10, 2017. I would like to advise you to proceed on the side of due diligence and contact
Joseph Nascimento, Robbins Turnkey Ross Amsel Raben & Waxmon, PA, MIAMI, FL, Benjamin S. Waxman, LLC, MIAMI, FL.
  There are a number of attorneys who have already won in cases like mine. Please contact them and reach out to as many
attorneys as possible. There are three cases in the he 5th Circuit that are similar to mine. It is critical under 21 U.S.C.S.
sections 841 & 846 that the government must prove that the defendant had knowledge that his alleged crime involved a
controlled substance. to establish a violation of 21 U.S.C.S.section 846 the government must prove beyond a reasonable doubt
that two or more persons (participants) agreed to commit a drug-related offense, that the defendant knew of the conspiracy, and
hat he agreed to become a member.
  The MOST IMPORTANT part is Association with a co-conspirator or presence at the scene of the crime is insufficient to prove
participation in a conspiracy. The government must prove that I knew the essential nature of the conspiracy. If you have read
he record, the government witness Michael Young stated that he had taken over the business, and that I was not involved in it,
Roslyn Chapman was a customer of his.
  The burden of proof is on the government to prove all elements of a crime beyond a reasonable doubt. See in re Warship, 397
J.S. 358, 364, 90 S. Ct. 1068, 1072, 25 L. Ed. 2d 368 (1970). When a man's liberty is at stake, we must be vigilant with this
burden. The government failed to offer evidence from which a reasonable jury could find that I had knowledge that the
packages Roslyn Chapman had in her car came from Michael Young or anyone else. Michael Young stated that he and I parted
vays before the conspiracy began. I need you to look at a case United States v. Perez-Tosta, 36 F. 3d 1552, 1556 (11th Cir.

TRULINCS  18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

--------------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Bell, Jennifer
SUBJECT: Lawyer Information
DATE: 06/17/2019 10:59:59 AM

as salaam alaikum

Let me take it slower (lol)

The attorney for my direct appeal name is Peter H. Barrett
He is court appointed (there are no fees owed after the appeal he will fill out a voucher and the tax payers will compensate)

I wanted you to go online
google his name and firm and see if he had an email address on the web pade
from there I would have contacted him
and added him to my email list

Pretty much that's all for now
I have a few packages about my case that I will get out to him today

Then I'm going to get some more out during the week
I pretty much have all the issues that I want to appeal on

It shouldn't take more than 30 days to get it already and submitted
I have everything outlined for them
he has to order the transcripts
I already have them so I'm already running

I'll also send him a package to teach him about everything
I looked him up on my end
in both the distrcit and court of appeals
It seems as though me as a neophyte already have more wins then he does
so pretty much I'm about to make him famous

TRULINCS  18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

--------------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Bell, Jennifer
SUBJECT: Appeal Bond
DATE: 06/17/2019 11:05:05 AM

as salaam alaikum

In a couple days I will contact him after the intial everything
and try to see what the prerequisites are for getting an appeal bond

I have a letter from the prosecutor and lawyers stating that my conviction should get over turned
the letter also states from an attorny all the substantive charges should be over turned too

the substantive charges couldn't hold more than a year in jail
not even that really

So I'm working on an argument now for an appeal bond
I'm trying to come up with an alternative to incarceration
be it a weekend jail program
a reporting to a federal office
a monitoring servive
or some form of home confinement

that's where my mind is right now
I'm submitting and sending him everything as if it can go directly into a brief
I don't need anyone around me thinking
I'll do all the thinking

I will also look up how many of the prosecutors he has worked with in the past
I've been here before
I'm much better than every lawyer I ever had
so I better take lead

ove you

TRULINCS  18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

--------------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Barrett, Peter
SUBJECT: Good Morning
DATE: 06/18/2019 12:30:17 PM


May Peace Be Upon You,

  My name is Rasheed Muhammad, I would like to thank you for accepting my email. Most recently my pro se motion to recall the mandate has been granted by the Court of Appeals. The Honorable Attorney Peter Barrett has been asked to represent me on appeal.
  Yesterday I had sent a letter introducing myself, I wasn't sure if I would be able to obtain the email address. I would like to thank you and your firm in advance. My case is a case that is rarely seen in the federal courts. I sent a few packages explaining what the chemicals are, what the new Supreme Court mens rea is and additional information that may be helpful learning about the case.
  If there is anything that you need from me in terms of research, or any questions that you may have please feel free to pile on as much as you can.

Thank you,

Rasheed

TRULINCS  18035043 - MUHAMMAD, RASHEED ALI – Unit: ALP-A-A

---------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Barrett, Peter
SUBJECT: Rasheed Muhammad
DATE: 07/01/2019 02:05:03 PM


Good day,

We have been locked down since last week. Tommorow we should be out
I will send you a Motion for bail pending appeal
and the exhibits

thank you

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

--------------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Asberry, Latiesha; Barrett, Peter; Bell, Akilah; Bell, Jennifer; Bloomberg, Esmerilida; Clement, Kenneth; Clement, Medgine; Davis, Angela; Davis, Ashley; Gurl, Candy; Lopez, Eileen; Meehan, Richard; Muhammad, Atiya; Muhammad, Layla; Ramirez, Maggie; Richardson, Deserie; Rogers, Jihad; Silas, Audrey; West, Aisha; Wiggins, Lannay; Youngblood, Ibn Amiri
SUBJECT: Motion for Bail Pending Appeal
DATE: 07/02/2019 08:51:40 AM

MOTION FOR BOND/BAIL PENDING APPEAL

BEFORE THE COURT is the Motion of Rasheed Ali Muhammad

Plaintiffs' interest in securing their "freedom 'from bodily restraint []' lies at the core of the liberty protected by the Due Process Clause." Turner, 564 U.S. at 445 (quoting Foucha V. Louisiana, 504 U.S. 71, 80 112 S. Ct. 1780, 118 L. Ed .2d 437 (1992)). Plaintiffs {2018 U.S. Dist Lexis 25} liberty interest weighs heavily in favor of procedural safe guards provided before imprisonment. Cain, 281 F.Supp. 3d at 651.

APPLICABLE LAW

Applicants for bail pending appeal are governed by 18 U.S.C. section 3143 (b) Congress intended to limit the availability of bond pending appeal, thus creating a presumption against bond pending appeal, "so that the conviction is presumed correct and the burden is on the convicted defendant to overcome that presumption." See United States V. Valdera-Elizondo, 761 F. 2d 1020,1024 (5th Cir. 1985)(discussing and adopting Third and Eleventh Circuit precedent. In the Fifth Circuit, a defendant seeking bond pending appeal must show:

(1) the Defendant is not likely to flee or pose a danger to the safety of any person or the community:

(2) the appeal is not for purpose of delay;

(3) the appeal raises a substantial question of law or fact; and

(4) that, if the substantial question is determined favorable to the defendant on appeal, the decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

I. FACTS AND PROCEDURAL HISTORY

A. The Indictment and First Superseding Indictment

On April 22,2014, a Grand Jury returned an eight-count Indictment against Muhammad and co-Defendant Roslyn Demetrius Chapman ("Chapman"). Muhammad was charged in Count 1 with knowingly and willfully conspiring to possess with intent to distribute amounts of certain controlled substances and controlled substance analogues. Indictment [3} at 1The remaining charges were against Chapman alone.  Id. at 2-4

After Chapman pleaded guilty to Count 1 of the indictment, a Grand Jury returned an eight-count First Superseding indictment [63] charged Muhammad with knowingly and willfully conspiring to possess with intent to distribute detectable amounts of certain controlled substance and controlled substance analogues in violation of 21 U.S.C. section 846, while Counts 2 through 8 charged Muhammad with knowingly and intentionally possessing with intent to distribute detectable amounts of specified controlled substances and controlled substance analogues in violation of 21 U.S.C. section 841 (a)(1) and 18 U.S.C. section 2. 1st Superseding Indictment [63] at 1-4

B. Muhammad's Conviction

Following a five-day jury trial, on January 9, 2015, Muhammad was found guilty of the charges in Counts 1,3 4, 5, 6, and 7 of the First Superseding Indictment, and was acquitted of those in Counts 2 and 8.  See Jury Verdict [87] at 1-3. Muhammad was represented by retained counsel throughout the trial. Muhammad was sentenced on April 20, 2015, to consecutive terms of imprisonment of 240 months as to each of the Counts 1,3,4,5,6, and 7 of the First Superseding Indictment. See Apr.20, 2015, Minute Entry.  The Court entered Judgment [108] on April 23, 2015. J. [108] at 1. Muhammad requested that the Court file a notice of appeal on his behalf, which was done on April 23, 2015. See Notice of Appeal [109] at 1.

TRULINCS  18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

--------------------------------------------------------------------------------------------

C. Muhammad's Appeal

On June 4, 2015 the United States Court of Appeals for the Fifth Circuit dismissed Muhammad's appeal for want of prosecution. Order [112] at 1. On July 10, 2015 Muhammad, through retained counsel Michael W. Crosby ("Crosby"), filed a Motion to Reopen Appeal, which the Fifth Circuit granted on July 16,2015. See Order [113] at 1. On August 20, 2015, the Fifth Circuit again dismissed Muhammad's appeal for want of prosecution, specifically for failing to timely pay the docketing fee, order transcripts, and make financial arrangements with the court reporter. See Order [114] at 1.

On September 10, 2015, the Fifth Circuit Clerk's Office sent correspondence to attorney-of-record Crosby, with a carbon copy to Muhammad, which stated in relevant part as follows: See United States V. Muhammad, No. 15-60300 (5th Cir. Sept. 11, 2015). On October 8, 2015 Crosby filed a Motion to Withdraw as counsel in the Fifth Circuit.  United States V. Muhammad, No. 15-60300 (5th Cir. Oct. 8, 2015). On October 9, 2015, the Fifth Circuit granted Crosby's Motion to Withdraw. On November 6, 2015 Muhammad filed a pro se Motion for Extension of Time. United States V. Muhammad, No. 15-60300 (5th Cir. Nov. 16, 2015).  On December 16, 2015, Muhammad filed a Motion to Reopen Appeal, which the Fifth Circuit treated as a motion for reconsideration and denied January 22, 2016. See United States v. Muhammad No. 15-60300 (5th Cir. Jan 22, 2016). August 22, 2016, Muhammad filed four pro se Motions [140][141][142][143], in this Court-seeking leave to file late motions to reinstate appeal, for appointment of counsel, and leave for appeal in forma pauperis. On August 23.2016, Muhammad filed a request to File Late Motion to Reinstate Appeal in Fifth Circuit. This Request was denied by a three-judge panel on September 6, 2016. United States V. Muhammad, No. 15-60300 (5th Cir. Sept. 6,2016). October 7,2016  [174] at 2, whom Muhammad refers to as his attorney in his post-conviction proceeding, see Mot. [165]at 10, though he is currently proceeding pro se. December 28, 2016, attorney Margaret Schmucker filed an appearance form on Muhammad's behalf in the Fifth Circuit followed by a Renewed Motion for Appointment of CJA Counsel. The Fifth Circuit construed the document as an "Opposed Motion for Reconsideration," See United States V. Muhammad, No. 15-60300 (5th Cir, Dec, 2016). June 10, 2019  it was ordered that Muhammad's Motion to Recall the Mandate is Granted. The Court appointed attorney Peter Hickman Barrett as counsel for the appeal.

II. Prong 1

A. Flight Risk

Muhammad will surrender his passport to ensure that there is no conclusion that he would become a risk of flight. His only ties are in America. All of his family and friends reside in this country. Muhammad was out on bond for over two years before he self surrendered on February 19, 2014 in Connecticut. Muhammad consistently appeared at every court proceeding. If additional imprisonment was required it would not provide a reason to flee. Muhammad is willing to submit his drivers license, and is willing to be restricted from applying for travel certification. Muhammad if required is willing to submit to location monitoring, and/or  24 hour home confinement (to eliminate any idea of a flight risk or risk to the community). Muhammad is interested in any and all combinations to ensure the courts of his where abouts (i.e. weekly or daily reporting to bond/case supervisors). His life long ties are to Connecticut. Depending on the conditions of release Muhammad intends to take up Hazwhooper classes online, and work full time.

The Governments witness Michael Young was asked a couple questions based on Muhammad propensity to violence and temperament Crosby on Cross (page 668 line 4 trial transcripts(see exhibit)A).

> Q. All right. Rasheed was not the type to carry guns or have guns was he?
> A. No, he is not known to carry any guns.
> Q. He wasn't a kind of person that if he got mad at somebody, he wouldn't threaten to kill them, would he? He's not like that?
> > A. No, he wouldn't.
> > Q. That's not him?
> > A. Definitely not.

The Government prosecutor John Meynardie says about Michael Young's testimony (Page 711 trial transcripts(see exhibit)B).  He didn't flip flop

Prong II

3. Delay

The defendant has been diligently pursuing his appeal for over five years now. The record clearly indicates that there has been no attempt to allow justice to linger. From the time of Indictment April 2014 to trial January 2015 further demonstrates that

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

--------------------------------------------------------------------------------------------

there was never any delays throughout this process. Muhammad avers his appeal is not for the purpose of delay.

Prong III

C. Substantial Questions of Law

Accordingly, jury instructions that relieve the Government of its burden violate a defendant's due process rights. Carella V. California, 491 U.S. 263, 265, 109 S. Ct. 2419, 105 L. Ed. 218 (1989). The public has a strong interest in the release of a prisoner that a court has found to be incarcerated in violation of the Constitution. Newman, 917 F. Supp. 2d at 789; Burbank V. Cain, No. 06-2121, 2007 U.S. Lexis 71032, 2007 WL 2809996, at *4 (E.D. La. Sept. 24, 2007).

Stephen Dominick McFadden 576, 135 S. Ct., 192 L. Ed. 2d 260, 2015 US Lexis Argued April 21, 2015. 21 U.S.C.S. section (a)(1) held to require Federal Government to show that criminal defendant, when controlled substance was analogue, knew that he was dealing with substance regulated under Controlled Substance Act or Analogue Act. Outcome Judgment vacated. Case Remanded 21 U.S.C.S. section 802 (32)(A), 813, 841(a)(1)

Barry Bays; Jerad Coleman No. 15-10358 680 Fed. Appx. 303; 2017 U.S. App lexis 3419 Feb. 24, 2017 Defendant conviction to distribute a controlled substance analogue, in violation of 21 U.S.C.S. section 846 was reversed because the jury was not properly instructed on the element of knowledge as the government required to prove that defendants knew the substances were analogues

Daniel James Stanford 823 F. 3d 814; 2016 U.S. App. Lexis 9108 No. 15-30127  May 18, 2016  The Court reversed defendant's conviction for conspiracy to distribute a controlled substance analogue (CSA), in violation of 846, 841 (b)(1)(c), 813 and 802 (32)(A), because the district court error, in ruling that the government was not required to prove that the defendant knew the synthetic marijuana compound distributed by the conspirator was a CSA.

Trial transcripts (page 888 line #7)see exhibit C)), The defendant need not have known that it was an analogue, that is, that it was illegal. What he needs to know is that that's what the product was, and the product had to have been illegal. Line #14 if it was a controlled substance, and if he possessed it, that is what the knowledge requirement is. He has to know what the product is. That's the knowledge requirement, not that he knew that it was on a schedule or not on a schedule or an analogue or not an analogue.

This instruction was erroneous.  At the time of trial there was a split pf circuit authority on required proof of scienter with the Fifth Circuit taking the view that such proof was not required. The District Judge's jury instructed the jury according to circuit precedent over Michael Crosby's objections and the jury convicted on six of eight counts. While the case was pending appeal the United States Supreme Court addressed the issue of scienter as to drug analogs in MaFadden V. United States, 135 S. Ct. 2298, 192 L. Ed. 2d 260 (2015).

McFadden held that the Controlled Substance Act ("CSA"), 21 U.S.C. section 841(a)(1), requires the Government to establish that the defendant knew that he was dealing with a controlled substance." McFadden, 135 S. Ct. at 2302. When the substance in an analogue, that  knowledge requirement is met if the defendant knew that the substance is an analogue, that knowledge requirement is met if the defendant knew that the substance was controlled under the CSA or the Controlled Substance Analogue Enforcement Act of 1986 ("Analogue Act"), even if the defendant did not know its identity. Id. According to the Supreme Court, the knowledge requirement is also met if the defendant knew the specific features of the substance that make it a "controlled substance analogue." Id. (citing 28 U.S.C. section (802)(32)(A)).

Error will be found, it will so taint the conviction, It is probable that an acquittal, reversal or new trial is warranted. There is a risk of great harm to the defendant to continue to spend additional time incarcerated only to have his conviction thrown out or re -tried. He explained to the Court during trial that his Connecticut charges would be dismissed and they were. The information used to get the conspiracy conviction of methylone has been dismissed.

False Testimony/Constructive Amendment/Actual Innocence

Governments prosecutor John A. Meynardie (Trial transcripts (page 806 line 10)D).

Q. Okay I'm going to concede to you at the beginning of this investigation that we were wrong. We thought you were Mohammed posser, but we were wrong.

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

---------------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Asberry, Latiesha; Barrett, Peter; Bell, Akilah; Bell, Jennifer; Bloomberg, Esmerillda; Clement, Kenneth; Clement, Medgine; Davis, Angela; Davis, Ashley; Lopez, Eileen; Meehan, Richard; Muhammad, Atiya; Muhammad, Layla; Ramirez, Maggie; Richardson, Deserie; Richardson, Lanisha; Rogers, Jihad; Silas, Audrey; West, Aisha; Wiggins, Lannay; Youngblood, Ibn Amiri
SUBJECT: Motion for Bail/Bond pending Appeal 1 of 4
DATE: 07/02/2019 08:52:52 AM


Governments Investigator Adam Gibbons on Cross (trial testimony page 218 line 16(see exhibit))

        Q. Because isn't it true that in the beginning, that you actually prepared the reports and made it all the way deep into this case believing in fact, that the person who was identifying himself as Pooser, you thought he was actually the defendant?
        A. Yes, I indicated that earlier
        Q. And that was the wrong assumption, wasn't it?
        A. Sure

        Attorney Michael W. Crosby (for defendant (trial transcripts page 908 line 12(see exhibit)).

        Closing Arguments: Rasheed was arrested, put in jail extradited and in this case went deep into it before they figured out that he was not Mohammed Pooser or the one identified as Mohammed1Pooser. That is an undisputed fact. The government admitted--the prosecutor stood here and he admitted to you they messed up. They made a huge mistake.

        Grand Jury testimony of Adam Gibbons (Superseding Indictment Page 3 line 8(see exhibit)).

        Q. You have interviewed, since indicting Ms. Chapman, Ms. Chapman regarding her activities with Mr. Muhammad. Correct?
        A. Correct
        Q. And on each of these occassions that Ms. Chapman sold or possessed with intent to distribute these controlled substances and analogs, she had recieved those analogs and the controlled substances from Mr. Muhammad. Is that correct?
        A. That is correct?

        Trial transcripts John Meynardie closing arguments (page 710 line 20(see exhibit)).

        Closing Arguments: But, Frankly she was caught red-handed in a lie
                line 25: She knew what she was doing, and she lied from the stand

        John Meynardie on Roslyn Chapman testimony (Page 334 line 7(see exhibit))

        Excuse me. The witness has changed her testimony, what she has told the agents in the past. On cross-examination, she began to tell a completely different story than what she told either prior or on direct examination, and I'm exploring that. I do believe that her proffer is now Giglio, and Ineed to give that to the defense, and I will do so. But until she started changing her testimony, there was nothing inconsistent between her proffer and what she had testified to. Now we have got a different story, and I

        Michael W. Crosby:

        If I may. I do not--I don't (sic) believe that she gave incorrect testimony inconsistent with her proffer until you get to the end where she is being told is she going back on her agreement is she going back on her plea. And after that is where it changed. Before that, and I believe she testified that she actually told the government about-- something about that she didn't think it had a correct chemical.

        Court: (trial testimony page 335 line 9(see exhibit))

        Well as to the present objection before the Court, first of all, it is impeachment

        (trial testimony page 335 line 16(see exhibit))

        the government will supply what it needs to supply, and if you need leave to ask some additional questions based

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

---------------------------------------------------------------------------------------------------------------

on what you are supplied with, I will give you leave to do that.

      Crosby (trial testimony page 517 line 14(see exhinit))

      Q. Okay. And the official report was prepared by you, correct?
      A. So if you are asking me do I have this report, yes, I have this report

      (page 518 line 11(see exhibit))

      Q. Now in that report that was referenced by Mr. Meynardie in yesterday's testimony, isn't it true that report does not say that Mrs. Chapman ever said that she knew was--had gained knowledge that these chemicals were in fact illegal but yet they continued to sell them anyway?
      A. This report does not;you are correct

      (page 528(see exhibit))

      Q. Agent, do I understand--you said as late as yesterday, it is your testimony that as a few days ago, that she again, according to you, said that she knew what she was doing at the time was illegal?

      Meynardie (trial testimony of Agent Adam Gibbons page 154(see exhibit))
      Q. This is page five Agent, again, from Jay Johnson. Is that correct?
      A. Correct Rosyln Chapman, Jay Johnson, to Mohammed Posser
      Q. And she is asking him to send--what is she

      Meynardie (trial testimony of Roslyn Chapman page 337 line 2(see exihibit))
      Q. If it is reported that you said the complete opposite, that you said that at some point--you said that at some point--you started out thinking it was legal and then figured out during the course of the conspiracy that it was illegal, if that is the report, that is inaccurate. Is that your what your testimony is?
      A. It's not my testimony, No. Can you rephrase the Question?
      Q. So that statement would be true, that you did figure out it was illegal during the course of the conspiracy?
A. Yes

      PSI page 38 line 347

      Discovery of Muhammad's e-mail used to order substances from China.

      As part of his interview with investigating agents, Michael Young advised the agents that Muhammad using email account know as Legal High. Agents requested e-mail records which were not recieved until after trial."

      Sentencing transcripts page 97 line 24(see exhibit)

      On October 8th 2014 it is says that Bowie identified her e-mail account as legal.high@yahoo.com as a registered e-mail which comes back to 117 Oak Avenue Shelton, Connecticut 06484.

      Crosby (Sentencing transcripts Volume II. Page 36 line 6(see exhibit))
      Q. All right. finally Agent, with respect to the Legal High issue, you would agree that that is a substantial amount of material, I beleive 3000 pages of e-mails on what is called legalhigh.com, correct?
      A. Correct. I think it was 3,875, right in that area.
      Q.3,875?
      A. 3,875 e-mails on that particular e-mail
      Q. Yeah, that's a substantial volume. But would you agree that you were well aware of that Legal High during the nvestigation well before trial ever started?
      A. We were aware of multiple e-mail accounts before trial started. So yeah, I would say yeah, I was aware of that.
      Q. So you answered yes, you were aware of legalhigh.com
      A. Before the trial? Yes.

  United States V. Phillips, 177 F.App'x 942(11th Cir. 2006) the government discovered that not only Agent Michael Ghent lied at trial, but during the investigation and subsequent trial of Phillips. Agent Adam Gibbons continued to give false testimony to the first grand jury as well as the first superseding grand jury. The false testimony is material "if there is any reasonable

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

---------------------------------------------------------------------------------------------------------------------

likelihood that [it] could have affected the judgement of the jury."Agurs, 427 U.S. at 103, 96 S. Ct. at 2397. "The could have standard requires a new trial unless the prosecution persuades the court that the false testimony was 'harmless beyond a reasonable doubt.'"

Most appellants rely heavily on our decision in Cancelliere, where we found that redacting a word "willfully" from an indictment charging defendant "knowingly and willfully" committing the offense of money laudering was a constructive amendment of the indictment United States V. Cancelliere, 69 F.3d 1116, 1121 (11th Cir. 1995). Our Court noted, though the term "willfully" was included by the government by mistake, the charge was read to the jury at the beginning of the trial, the jury listened to the defendant try to prove he acted in good faith, and then the district court "instructed them they could convict without mentioning any requirement that they find we acted willfully." Id. This redaction, our Court found, impermissibly broadened the scope of the indictment and mandated reversal. Id.

Crosby (Trial transcripts Page 836 line 15(see exhibit))
Closing Argument:  I also would like to point out and apply that the word "willfully" is not in the jury instructions, whereas the indictment charges that he did knowingly and willfully, not or, but knowingly and willfully conspire to posses with intent. And the word "willfully" appears throughout the indictment. The word "willfully,"as the Court has noted in our conference, and it's explained very well in the pattern jury instruction 1.38, and the cases cited therein support the legal recognition that the word "willfully" is a much more--it requires much more proof of show that a person willfully did something than it requires to show that you did it with knowledge--or requires proof of knowledge. Willfully connotes a higher degree of criminal intent than the word "knowingly." So when we take the word "willfully" from the jury instructions, we have eliminated a burden that the government would have had to--would have to prove. We have lessened their burden. And when you lessen their burden, then you have amended the indictment constructively by the jury instructions.
(trial transcripts Page 837 line 18(see exhibit)
In this case, we clearly referenced willfully throughout the entire case. It was a part of our defense. And now the word "willfully" has been omitted by a constructive amendment, despite the fact it is in the indictment and irregardless of wheter it is in the statue. I will agree that it appears on the face of it that maybe the statue does not require the word "willfully" But again, that doesn't matter, and it doesn't matter because it's in the indictment, and the Grand Jury saw fit to do that.
(Trial transcript Page 839 line 6(see exhibit))
And, finally, with respect to all these issues, when there's ambiguity or confusion in the way a defendant should be charged, when you are reading a statue, we all know the ambiguities are to be construed in favor of the defendant. The idea of lenity and the legal notion of lenity and constructive --and the application of ambiguities, all of those favor the defendant. And to allow the charge this way under these circumstances would be unconstituitonal.

Actual Innocence

Darren J. Lamarca (Grand Jury Transcripts of First Superseding Indictment  page 4 line 12 testimony of Agent Adam Gibbons(see exhibit))
Q. And this all began in December of 2012 up until the date of the original indictment April 22, 2014. Correct?
A. Correct

Q. And, actually, since the indictment, Ms. chapman has continued to receive on some occassions other controlled substance analogs. Correct?
A. That is correct, up until the time she was taken into custody.

Q. Up until she was taken into custody.
A. Correct
Q. Which occured not long after April 22nd of 2014
A. That's correct

A reporter/journalist named Esmerillda for the Bloomberg News contacted Muhammad to do an interview about Controlled Substance Analogues. She sent an email to Muhammad which states (see exhibit):

I'm very confused by something I just discovered in his case file:email correspondence between the email account egal.high@yahoo.com (which prosecutors link to him) and William Zhou aka Xiaobing Yan (the dealer in China now being indicted by US Atty's office in MS for selling fentanyl and other drugs) that takes place during the months of May, June and July of 2014. As fas as I can tell, he would have been in jailduring this time (I show him having been sentenced to five years in CT prison for forgery on 2/19/14, in Enfield Correctional Institution on 4/22/2014 when a warrant was issued for his arrest, arrested on 6/27/14 and in federal custody as of 7/7/14). So how could it have been him sending emails? That seems like a major problem for the government's case against him! The emails from that time period show Yan sending various chemicals to someone named RMG at 929 White Plains Rd. #406 Trumbull, CT and the wire transfers coming from Michael Young. So you

TRULINCS  18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

--------------------------------------------------------------------------------

know if RMG is Michal Young? Or someone else?

TRULINCS  18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

-----------------------------------------------------------------------------------------------

FROM: 18035043
TO: Barrett, Peter; Bell, Akilah; Bell, Jennifer; Clement, Medgine; Davis, Angela; Lopez, Eileen; Muhammad, Atiya; Ramirez, Maggie; West, Aisha
SUBJECT: Attorney Barrett (motion for bail)
DATE: 07/02/2019 08:56:17 AM


Attorney Barrett,

The facility has just beeen shut down again...I have a few more pages. I will try to get you the rest of this motion with the exhibits as soon as the facility opens up.

I would like to get this motion in within the next three weeks provided we come off lock down. Please let me know if you need a copy of the PSR and trial transcripts.

Thank you

I believe I can meet each of the prongs

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

---------------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Asberry, Latiesha; Barrett, Peter; Bell, Akilah; Bell, Jennifer; Bloomberg, Esmerillda; Clement, Kenneth; Clement, Medgine; Davis, Angela; Davis, Ashley; Gonzalez, Kim; Gurl, Candy; Lopez, Eileen; Meehan, Richard; Muhammad, Atiya; Muhammad, Layla; Ramirez, Maggie; Richardson, Deserie; Richardson, Lanisha; Rogers, Jihad; Silas, Audrey; West, Aisha; Wiggins, Lannay; Youngblood, Ibn Amiri
SUBJECT: Motion for Bail Pending Appeal (3) 3 of 4
DATE: 07/02/2019 02:27:40 PM

.

> Meynardie (Trial transcripts page 300 line 23(see exhibit))
> > Q. Now, Ms. Chapman, at what point did you leave this business?
> > A. Roughly in the time frame of that last e-mail, around July of 13
> > Q. When did you say you moved to San Diego?
> > A. I moved to San Diego the end of June July. That's when I stopped.

Muhammad was entitled to a Jury that was not laboring under a Government-sanctioned false impression of material evidence when it decided the question of guilt or innocence as to Muhammad. Due Process is violated when the prosecutor obtains a conviction with the aid of false evidence and allows to go uncorrected. The Jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of a witness in testifying falsely that a defendant's life or liberty may depend on. Prosecutor failure to correct false evidence affecting credibility taints a conviction.

The gateway should open only when a petition presents 'evidence of innocence so strong that a Court cannot have confidence in the outcome of the trial unless the Court is also satisfied that the trial was free of nonharmless constitutional error (Schlup V. Delo, 513 U.S. 298, 316(1995).

FATAL VARIANCE

A fatal variance exists only when there has been variance between the evidence and the indictment such that it effects the substantial rights of the defendant.

> Testimony of Special Agent Adam Gibbons (Grand Jury NO. 14-170(14-1))
> (Given Tuesday, April 22, 2014 (Page 3 line 9) Defendant R. Chapman))
We responded to the scene, and during an inventory of the car, we recovered multiple synthetic analogue chemicals to include XLR11, 83.1 grams; a synthetic chemical which is called MAM2201 we recovered 275.9 grams; AM2201, 243.9 grams; and a chemical called a-PVP, and we recovered 222.0 grams.

> Grand Jury transcript April 22, 2014 (page 7 line 5)
> Examination Conducted by: John M. Dowdy, JR., ESQ.
> > Q. And then another one that you mentioned was AM2201?
> > A. Correct
> > Q. And it's a 1-(5-Fluropentyl)-3-(1 naphthoyl) indole?
> > A. Yes, sir
> > Q. Okay. And that's also--basically it's a Schedule 1 controlled substance, which has a detectable
amount of methylone. Right?
> > A. That's correct.

> Closing Argument Meynardie (Trial testimony page 890 line 3 (see exhibit))

> Now, you will also note there were three--four substances that were found in his closet on August 7,
2013 and you wont find them in this indictment as charged substantive counts. And the reason for that is, none of those drugs came to Mississippi.

> The drugs that the Governments prosecutor Meynardie is referring to is Methylone. Agent Adam
Gibbons agreed with John M. Dowdy there was a detectable amount of Methylone with AM-2201. These were the chemicals that were alleged to have been found in Roslyn Chapman car when they responded to the scene. A variance occurs when evidence at trial proves facts other than those alleged in the indictment, but the charging terms and elements stated in the indictment remain unaltered. A fatal variance exists only when there has been variance between the evidence and the

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

---------------------------------------------------------------------------------------------------------

indictment such that it effects the substantial rights of the defendant.

    Meynardie (Cross of Rasheed Muhammd page 808(see exhibit))
     Q. So the Question is, because we got one little thing wrong at the beginning of the investigation, you decided to not look for things that you claim exist that could--I don't think they would exonerate you but at least helpful to you.

    Rasheed Muhammad allocution (Sentencing transcript page 110 line 17(see exhibit))

     Muhammad: "On Friday, October 18, 2013, the Drug Enforcement Administration Task Force Agent TFA, Adam Gibbons, and Intelligence Research Specialist John Metcalf, received Exhibit N-36 described as a data disk with contents from e-mail address for mohammed1posser@gmail.com operated by Rasheed Ali Muhammad. The e-mail accounts are being used to distribute and submit synthetic narcotics. The data disk was in compliance of a search warranted signed by United States Magistrate Judge Robert Walker

 Generally, "the exclusionary rule prohibits the introduction of an illegal search, or evidence know as the fruit of the poisonous tree." The exclusionary rule supplies the typical remedy for Fourth Amendment violations: suppression of the evidence at trial. See Mapp V. Ohio, 367 U.S. 643, 648, 81 S. Ct. 1684 6 L. ed. 2d 1081, 86 OHIO LAW Abs. 573 (1961). "The exclusionary rule reaches not only the evidence uncovered as a direct result of the violation, but also evidence indirectly derived from it-so-called fruit of the poisonous tree." United States V. Mendez, 885 F. 3d 899, 909 (5th Cir 2018)(quoting Utah V. Strieff, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d. 400 (2016)). Physical evidence as well as verbal statements acquired downstream of a violation can be such fruit. See Wong Sun V. United States, 371 U.S. 471, 485, 83 S. Ct. 407, 9L, Ed 2d 441 (1963).

    Grand Jury Testimony (Page 3 line 12 original indictment)see exhibit
    Special Agent Adam Gibbons, having first been duly sworn, testified as follows:

    We recovered 275.9 grams; Am2201, 243.9 grams:

    Grand Jury Testimony (Page 8 line 3)(see exhibit))

     Q. And on March 20th, you've got, for Count 3, Mr. Muhammad charged with actually sending or ntending to be distributed AM2201, which is a controlled substance. Correct?
      A. Right
      Q. And he did that by delivering it to Ms. Chapman for their distribution
      A. Correct

    First Superseding Indictment (Page line)see exhibit))

    Count 3
     On about March 20, 2013, in Jackson County, in the Southern Division of the Southern District of Mississippi and elsewhere, the defendant Rasheed Ali Muhammad, aided and abetted by others known and unknown to the Grand Jury, did knowingly and intentionally possess with intent to distribute a detectable amount of 1-(5-Fluoropentyl)-3-(1-naphthoyl)indole (AM2201), A Schedule 1 controlled substance

    Trial transcripts (Page 97 line 12(see exhibit))

     Q. Now, your submission 3 would be our G-10. What did you find in that case?
     A. Submission 3 was also a green leafy substance, and I measured 243.0 grams, and I found 5F-
AKB48 and AM2201.
     Q. All right. Now, AM2201 was a controlled substance?
     A. Yes.
     Q. This is the first time the jury has heard of 5F-AKB48. Would you tell us what that is?
     A. It's a synthetic cannabinoid.
     Q. Do you know whether it was a controlled substance at the time?
     A. No, it was not controlled at the time.

    Trial transcripts (Page 60 line 25) Officer at the traffic stop Alfred Parker

    Morgan (Direct)
    Q. That she may have indicated it was spice?

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

---

A. Yes, ma'am

Trial transcripts (Page 74 line 9)see exhibit)) Officer Patrick Brandle

Morgan (Direct)
Q. What does it appear to contain?
A. It's a foil pack of what typically contains what we call spice.

Trial transcripts (Page 610 line 10(see exhibit)) Governments witness Michael Young

Meynardie (Direct)
Q. Now, we are up to December of 2012, and you--he is sort of running the chemical part, and you are running the spice part. Is that a fair statement?
A. Yes, that's pretty fair

The trial Court should have informed the jury, in conformity with the charges brought in the indictment, that AM2201 was synomous with spice. The general ingredient was adequately stated, however, they altered an essential element of the crime charged of AM2201 was used to manufacture a control substance spice. The jury in this case should have been informed that "controlled substance," in this case was spice.

This product also contained AF-AKB48 which was not a controlled substance but an analogue. Agent Adam Gibbons omitted that ingredient which the Grand Jury could have found not a controlled substance. The indictment should have been dismissed. The agent pathologically provided false testimony in both Grand jury proceedings. The government conceded to getting it wrong in the beginning. Trial testimony proved evidence different from the indictment. The prosecutor knowingly permitted the governments principle witness Agent Adam Gibbons to testify falsely; and withheld evidence from the Grand Jury. If the prosecutors did not know, they should have known.

United Sates v. McNair, 605 F.3d 1152,1208 (11th Cir. 2010). When the alleged prosecutorial misconduct occurs in the context of a grand jury proceeding we dismiss the indictment only when the misconduct "substantially influenced the grand jury decision to indict." or when there is grave doubt that the decision was free from the substantial influence of such violations.

Prong IV

Sentencing transcripts (page 90 line 14(see exhibit))
Court:

Based on the Court's rulings, then the guideline computations would be as follows: The offense level is 43. The criminal history category would be a VI. That would give the defendant a guideline range of life imprisonment. Because the counts under which he was convicted, counts 1,3,4,5,6, and 7 each carry a statutory maximum sentence of 20 years, which is significantly below the guideline range, Section 5G1.2(b) of the guidelines states that the Court shall determine the total punishment and shall impose that total punishment on each count except to the extent otherwise applied by law and required by law.

And in application note one, it states that usually at least one of the counts will have a statutory maximum adequate to permit imposition of the total punishment as a sentence on that count. The sentence on each of the other counts will then be set at the lesser of the total punishment and the applicable statutory maximum and be made to run concurrently with all or part of the longest sentence. If no count carries an adequate statutory maximum, consecutive sentences are to be imposed to the extent necessary to achieve the total punishment. That is under Section 5G1.2 of the guidelines.

Sentencing transcripts (Page 133 line 23(see exhibit))
Court:

And it is hereby the judgment of the Court that the defendant, Rasheed Ali Muhammad, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 240 months to each of Counts 1,3,4,5,6, and 7 of the superseding indictment. And all such terms shall run consecutively to each other for a term of 1,440 months.

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

---------------------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Asberry, Latiesha; Barrett, Peter; Bell, Akilah; Bell, Jennifer; Bloomberg, Esmerillda; Clement, Kenneth; Clement, Medgine;
Davis, Angela; Davis, Ashley; Gonzalez, Kim; Gurl, Candy; Lopez, Eileen; Meehan, Richard; Muhammad, Atiya; Muhammad,
Layla; Ramirez, Maggie; Richardson, Deserie; Richardson, Lanisha; Rogers, Jihad; Silas, Audrey; West, Aisha; Wiggins,
Lannay; Youngblood, Ibn Amiri
SUBJECT: Motion for Bond pending appeal 4 of 4
DATE: 07/03/2019 01:22:09 PM

.

                  (Trial transcript Page 719(see exhibit))
                  Meynardie:
                  Now, turning to the evidence in this case, there's evidence which the jury has agreed to disregard
if it chooses to that AM2201 and Methylone were controlled substances at all times relevant to this
case. The indictment charges a time period beginning December of 2012 up to December of 2014          in
count 1, and the remaining counts charge times in or about March of 2013.

On March 20th there was 243.9 grams found in Roslyn Chapman car for a total weight of 243.9 grams. The Spice found in
Roslyn Chapman car included AF-AKB48 and AM2201 that was applied to a green leafy substance. There are 2 grams of
chemical to every 28 grams of green leafy material. THC has a 167-1 ratio with AM2201. In this count (count 3) that would
require 18 grams of AM2201 18 grams of AF-AKB48 for a total of 3,166 grams of marijuana. On the drug quantity table (Part 1)
this would be an offense level of 12 (2.5 kg to 5 kg). On the sentencing table, offense level 12, and a criminal category history of
VI would put the defendant in a 24-30 month guideline range. The defendant entered the federal system June of 2014. He
already has over 60 months in. That equals to 30 months over the range of the largest count that he could possibly be charged
with if the government gets over the hurdle of prosecutorial misconduct in count 3.

Moore v. Kemp, 824 F. 2d 847 (11th Cir. 1987) The Eleventh Circuit found that a "colorable showing of factual innocence" is
the test, or development of true facts or resulted in the admission of false ones, on a material question involving the sentence,
the result is the same. The Court then held at, a minimum, the ends of justice will demand consideration of the merits of a
colorable showing of factual innocence. The Moore Court was guided by Smith v. Murray. In consideration of whether "the
alleged constitutional error [either] precluded the development of facts [or] resulted in the admission of false ones."Id.

Based on the Supreme Court decision in McFadden (mens rea of "knowledge requirement") and the other cases mentioned
n good faith the Court can conclude that it is likely to result in a reversal or an order for a new trial on all counts. The remaining
counts that include AM2201 do not carry over 120 months of incarceration. The government conceded to errors. The
Exclusionary rule supplies the typical remedy for Fourth Amendment violations: suppression of the evidence at trial. See Mapp
v. Ohio, 367 U.S. 643, 648, 81 S. Ct. 1684 6 L. Ed. 2d. 1081, 86 OHIO LAW Abs. 573 (1961). "The exclusionary rule reaches
not only the evidence uncovered as a direct result of the violation, but also evidence indirectly derived from it-so-called fruit of
the poisonous tree." United States v. Mendez, 885 F.3d 899,909 (5th Cir 2018)(quoting Utah v. Strieff, 136 S. Ct. 2056, 2061,
195 L. Ed. 2d. 400 (2016)). Physical evidence as well as verbal statements acquired downstream of a violation can be such
fruit. See Wong Sun v. United States, 371 U.S. 471, 485, 83 S. Ct. 407, 9L, Ed. 2d 441 (1663). If the government not only fails
to correct materially false testimony at trial, but also affirmatively capitalize on it, the defendant due process rights are violated.
The actions of Agent Gibbons corrupted the truth-seeking function of the trial process. The falsehood was material, it also
undermine confidence by the record.

There are conditions the court could impose that would ensure the defendant was neither a flight risk or a danger to the
community. Muhammad is willing to accept a combination of all conditions imposed including home confinement, reporting to a
supervised officer daily, weekly, or monthly. Muhammad family is willing to pay for home confinement and the cost of monitoring
devices. Muhammad family has the resources to get him enrolled in a hazwhooper course immediately, he will volunteer at
shelters, or food banks until he gains employment. His family and friends have agreed to sign bonds if required to secure the
Courts trust. He has never been involved in any violence. Family and friends in Connecticut, North Carolina, Washington D.C.,
and Puerto Rico have agreed that Muhammad could reside with them until his case is resolved. Muhammad if required has a
iance who is willing to move to the Southern District of Mississippi and reside their until this case is disposed of.

CONCLUSION

WHEREFORE, based on the above Rasheed Ali Muhammad, urges this Honorable Court to issue an order to Grant a
conditional bail/bond and/or home detention allowing him the opportunity to report to the State of Connecticut, county of
Fairfield Supervised Officer within 72 hours upon release from federal prison.

TRULINCS  18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A
--------------------------------------------------------------------------------------------------

Respectfully submitted on this__ day of __2019.

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

----------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Barrett, Peter; Bell, Jennifer; Davis, Angela; Muhammad, Atiya; West, Aisha
SUBJECT: Retainer & Fees
DATE: 07/08/2019 01:22:28 PM

Rasheed Ali Muhammad
#18035-043
P.O. Box 3000
White Deer, Pa. 17227-3000
USP Allenwood

Dear Attorney Peter Barrett,

Please let me know if you are interested in submitting a Motion for Bail/Bond Pending Appeal in my case. I sent 4 emails that pertain to the issues of why a bail/bond should be granted in my case. Please let me know if i should send a check to your offices for a fund that will support the Motion being put in as soon as possible. If you're not able to do it within a week or so would you please recommend to me a firm who could take care of that for me.

have an electronic copy of the trial transcripts, as well as the sentencing transcripts. I sent a copy of the exhibits to compliment the Motion. I have several people who would like to send character letters to also aid the Motion. Usually when an attorney has represented me they sent me a package a couple business cards etc.. A few years back when I sent my family to retain you I believe you had a green business card, or an all white card with green at the bottom.

just need to know if you will handle the Motion. I can't do it myself because that's considered hybrid representation. I really don't want anything additional in the motion, possibly that should be edited but that's primarily what I want to represent me.

Whatever the retainer is please contact Jennifer Bell at 203.572.2832 so everything can be taking care of thank you.

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

------------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Barrett, Peter; Bell, Akilah; Bell, Jennifer; Bloomberg, Esmerillda; Clement, Kenneth; Clement, Medgine; Davis, Angela;
Davis, Ashley; Gurl, Candy; Lopez, Eileen; Meehan, Richard; Muhammad, Atiya; Muhammad, Layla; Ramirez, Maggie;
Richardson, Deserie; Richardson, Lanisha; Rogers, Jihad; Silas, Audrey; West, Aisha; Wiggins, Lannay; Youngblood, Ibn Amiri
SUBJECT: False Testimony (Issue to Appeal)
DATE: 07/25/2019 07:56:33 AM

### PRESENTATION OF FALSE TESTIMONY BEFORE THE GRAND JURY

"Government misconduct does not mandate dismissal of an indictment unless it is so outrageous that it violates the principle
of fundamental fairness under the due process clause;" such violations are found only in the rarest circumstances. Johnson, 68
F.3d at 902 (internal quotation marks omitted). The knowing presentation of perjured testimony at trial in order to secure a
conviction constitutes such a due process violation. E.g. Miller v. Pate, 386 U.S. 1, 87 S. Ct. 785 17 L. Ed. 2d 690 (1967). {2003
U.S. App. Lexis 16} However, where the Government presents false testimony sponsored by the Government and material to
the decision to indict. See Strouse, 286 F. 3d at 773-74. A statement is material if it is capable of influencing the fact finder with
regard to the issue before it. Id. at 771

"To establish a due process violation based on the government's use of false or misleading testimony [Muhammad] must
show that (1) the testimony in question was actually false; (2)the testimony was material; and (3) the prosecution had
knowledge that the testimony was false. United States v. Webster, 392 F. 3d 787, 801 (5th Cir. 2004). "[A] conviction obtained
by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood
that the false testimony could have affected the judgment of the jury." United States v. Bagley, 473 U.S. 667, 678 105 S. Ct.
3375, 87 L. Ed. 2d 481 (1985)(internal quotation marks and citations omitted).

Testimony of Special Agent Adam Gibbons "Gibbons" Examination conducted by John M. Dowdy, Jr., Esq.  April 22, 2014
(Page 4 line 19)

    Q. Okay. And so did you learn during the course of your investigation that basically Roslyn
Demetrius Chapman was having various chemicals shipped to her and that there was some
form of compounding of some of these chemicals, and then she would in turn ship it to
Rasheed Ali Muhammad for his distribution of those substances up in the New England
area?

    A. That's correct. And we worked with the Connecticut State Police Narcotics Task Force,
which worked closely with us, and during the course and scope of this investigation, we                                          did--
 did seven different e-mail addresses that were associated with Roslyn Chapman                                                                 and
Rasheed Ali Muhammad where they conspired to ship synthetic compounds to 15
different states, including two cities in Canada.

Pre-Sentence Investigation Report "PSR"  Summary of Email Account Mohammed1Pooser@gmail.com (Page 15)

    On November 18, 2013, agents summarized Rasheed Ali Muhammad's email account identified as
mohammed1pooser@gmail.com. On March 28, 2013 Muhammad received photos of packages commonly used for synthetic
narcotics distribution from email, mohammed1pooser@yahoo.com, which was believed to also be operated by Rasheed Ali
Muhammad. (Page 16 paragraph 92) On April 3, 2013, an email was received from Chapman requesting 100 bags of popular "3
and 4 gram." Chapman also stated to get "ki", which is a slang term used by narcotics distributors for kilogram, she will send
him a P.O. Box to send it to. (Page 16 paragraph 94) On April 8, 2013, Muhammad received an email from Chapman requested
a sample be sent to Dan Mulrine in Pine Grove, Pennsylvania, Eric Vehar in Lincoln Nebraska, and Trevor Smith in Ontario
Canada.

    The conduct of Roslyn Demetrius Chapman and Mohammed Pooser is clearly established in the PSR. The investigation that
was conducted found "Chapman" and "Pooser" (whom was believed to be "Muhammad") complying with the conduct in the
grand jury transcripts. Gibbons stated it was Rasheed Ali Muhammad and "Chapman" that had conspired to distribute to
customers in different states, including cities in Canada. The PSR proves it was not "Muhammad". The PSR throughout used
the spelling of Rasheed Ali Muhammad's name "Muhammad" when in fact it was "Pooser". See Page 5 (April 22, 2014 grand
jury transcript).

    A district court may not dismiss an indictment for errors in grand jury proceedings unless such error prejudiced the
defendant. Whether or not prosecutorial misconduct prejudiced a defendant depends on whether it affected the grand jury

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

-------------------------------------------------------------------------------------------------------

decision to indict. Bank of Nova Scotia v. United States, 487 U.S. 250, 108 S. Ct. 2369, 2373, 101 L. Ed. 2d 278 (1988)

Testimony of "Gibbons" First Superseding Indictment (Page 4 line 7) December 9, 2014

                 Q. Okay. So Mr. Muhammad was having those controlled substances and analogs delivered to her for further distribution on the Mississippi Coast. Is that correct?

                 A. That's correct.

                 Q. And, actually, since the indictment, Ms. Chapman has continued to receive on some occasions other controlled substance analogs. Correct?

                 A. That is correct, up until the time she was taken into custody.

                 Q. Up until the time she was taken into custody.

                 A. Correct

                 Q. Which occurred not long after April 22nd of 2014

                 A. That's correct.

Testimony of Government witness Roslyn Chapman Direct Trial transcript (Page 300 line 21)

Meynardie:   Q. Now, Ms. Chapman, at what point did you leave this business?

                 A. Roughly in the time frame of that last e-mail, around July of '13.

                 Q. When did you say you moved to San Diego?

                 A. I moved to San Diego the end of June, July. That's when I stopped.

                 Q. And you had no more dealings with Mr. Muhammad after that?

                 A. Not in the business sense, no.

Testimony of Government witness Michael Young Trial transcript (Page 611 line 17)

        Meynardie:   Q. Did that stay--I think there's been testimony here that he was arrested in February of 2014. Did it stay, that relationship from--

                 A. Well, he went to jail in February of 2014

                 Q. Correct

                 A. Yes

Presentence Investigation Report (Page 16 paragraph 105)

On May 9, 2013, Chapman sent Muhammad an email requesting two pounds of Purple Flowers "3 and 4 gram." Chapman and half pound of cola. (Page 16 paragraph 107) On May 10, 2013, Muhammad received an email from chapmanrd1986@gmail.com.... Chapman further requested 1 and 1/2 ounce of APVP and 100 caps, and small mylar bags be sent with order. "Gibbons" testified under oath (Page 3 line 20) First Superseding Indictment)) Q. And on each of the occasions that Ms. Chapman sold or distributed or possessed with the intent to distribute these controlled substance and analogs, she had received those analogs and the controlled substance from Mr. Muhammad. Is that correct? A. Correct

Agent "Gibbons" under oath testified to the grand jury that "Chapman" was sending "Muhammad" chemicals for his distribution in the New England area. December 9th 2014 he changed his testimony in the first superseding grand jury that "Muhammad" had delivered to "Chapman" controlled substances and controlled substance analogs for her distribution on the

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

-------------------------------------------------------------------------------------------------------------

Mississippi Coast. Muhammad was sentenced to five years in Connecticut February 19, 2014. Agent "Gibbons" testified that she continued to receive chemicals from Muhammad up until she was taken into custody which occurred not long after April 22nd of 2014. This is another example of a false statement provided by agent "Gibbons", to the grand jury.

   "[T]he 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible." United States v. Thomas, 62 F. 3d 1332, 1343 (11th Cir. 1995). Muhammad Fifth Amendment due process rights were violated when the Government presented a factually incorrect indictment and elicited false testimony before the grand jury. The prosecution violated its constitutional duty to communicate impeachment information, Giglio v. United States, 405 U.S. 150, 154. 92 S. Ct. 763, 31 L. Ed. 2d 104,

   Examination conducted by John M. Dowdy, Jr.,Esq. Agent "Gibbons" Grand Jury testimony April 22, 2014 (Page 3 line 9)

   We responded to the scene, and during an inventory of the car, we recovered multiple synthetic analogue chemicals to include XLR11, 283.1 grams; a synthetic chemical which is called MAM2201 we recovered 275.9 grams; AM2201, 243.9 grams; and a chemical called a-PVP, and we recovered 222.0 grams.

           Agent "Gibbons" Grand Jury testimony April 22,2014 (Page 7 line 5) John M. Dowdy, Jr., Esq.

               Q. And then another one that you mentioned was AM2201?

               A. Correct.

               Q. And it's a 1-(5-Fluropentyl)-3-(1 naphotyle)indole?

               A. Yes, sir.

               Q. Okay. And that's also--basically it's a Schedule 1 controlled substance, which has a detectable amount of methylone. Right?

               A. That's correct.

           Agent "Gibbons" Grand Jury testimony April 22, 2014 (Page 7 line 22)

               Q. And all of that was confirmed by the lab. Is that correct?

               A. That's correct

           Government expert witness L. Fulks-Direct Trial transcript (Page 97 line 12)

       "Meynardie": Q. Now, your submission 3 would be our G-10. What did you find in that case?

               A. Submission 3 was also a green leafy substance, and I measured 243.0 grams, and I found 5F-AKB48 and AM2201.

               Q. This is the first time the jury has heard of 5F-AKB48. Would you tell us what that is?

               A. It's a synthetic cannabinoid.

               Q. Do you know whether it was a controlled substance at the time?

               A. No, it was not controlled at the time.

           "Meynardie" closing argument (Trial transcript Page 890 line 3)

   Now you will also note there were three--four substances that were found in his closet on August 7, 2013 and you wont find hem in this indictment as charged substantive counts. And the reason for that is, none of those drugs came to Mississippi.

   Under oath in the indictment (April 22, 2014) "Gibbons" said that there was a mixture of AM2201 and Methylone See page 7 ine 5. The government expert witness Laura Fulks (testified in trial) and "Meynardie" both made statements contrary to

TRULINCS  18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

--------------------------------------------------------------------------------------------------------

"Gibbons" testimony. AM2201 is material to the count of conspiracy (count 1), and counts 3 and 5 of the substantive counts. Methylone was not mixed with AM2201, trial testimony by the government witness L. Fulks said 5F-AKB48 and a green leafy substance was mixed with AM2201. Methylone is not a cannabinoid.

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

----------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Barrett, Peter; Bell, Jennifer; Muhammad, Atiya; Ramirez, Maggie; West, Aisha
SUBJECT: Counts 3 & 5 (Motion for Bond) Rasheed Muhammad
DATE: 07/25/2019 01:37:04 PM

Good day,

   My mother informed me when she called that you stated 5 of the charges fall under the McFadden (Supreme Court decision). To qualify for the 4th Prong in a motion for bail/bond pending appeal all of the charges must be remanded. I'm of the opinion because my sentence was consecutive and I received 240 months for each count in order to achieve the term of a LIFE sentence, which the judge stated 1440 months still fell far below the bar. There was no factual finding in each of the counts. Count 3 at best qualifies for around 6 months to a year imprisonment. Count 5 couldn't get me a weekend in jail.

   In the "PSR" paragraph 347:

   As part of his interview with the investigating agents, Michael Young advised the agents that Muhammad used an email account known as "Legal High". Agents requested email records which were not received until after Muhammad's trial.

   2011  9/03/2011 100 (grams) AM2201
   2011 9/14/2011  100 (grams) AM2201

   2012

2012  7/30/2012 1kg   AM2201

   The problem is...

AM2201 as of July 2012 became a banned substance in the United States. Before this time it was a controlled substance analogue.

   The Judge erroneously sentenced me to the total amount in the PSR 24.11 kilograms of AM2201. The indictment charges AM 2201 as a controlled substance.

   The PSR has dates of 9/03/2011 & 9/14/2011 this is an obvious error (plain error). The jury would have had to have found that these controlled substance analogues should have been controlled substance as a comparison to something on the schedule and this was not done. The indictment also stated that the conspiracy began December 2012. These dates precede the conspiracy and the substantive charges.

a controlled substance analogue as defined in Title 21, United States Code, Section 802 (32), with intent for human consumption as provided in Title 21, United States, section 813

   This argument with the mens rea argument would include all 6 counts being remanded, and vacated. I argued this in the allocution and had my attorney object to it as well. I have already exceeded any possible sentence that they could impose.

   I need to know if you are willing to submit the motion for bond/bail pending appeal, or is that outside the scope in which you are required to do. Thank you.

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

----------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Barrett, Peter; Bell, Akilah; Bell, Jennifer; Clement, Kenneth; Clement, Medgine; Davis, Angela; Davis, Ashley; Lopez,
Eileen; Muhammad, Atiya; Muhammad, Layla; Silas, Audrey; West, Aisha; Youngblood, Ibn Amiri
SUBJECT: Hybrid Representation
DATE: 08/05/2019 07:09:57 AM

Attorney Barrett,

 A family member of mine tried to contact you last week and will attempt again
We are trying to learn if you received the information from the Courts that you were waiting on
I also understand that you were trying to schedule an appointment to meet with Attorney Crosby

 I understand that the Transcript order has probably been ordered by now
 (if 15 days has passed between that time)
 I haven't received an Electronic Record on Appeal Certification (notice)
 After that I understand is the Briefing Notice

 If you have received the trial transcripts please let me know,
 I have asked you before if you were willing to submit a Motion for Bond Pending Appeal,
 howbeit, I still have not received a response on the matter

 This court will deny a defendant's pro se motion for said motion because this court does not permit hybrid representation and,
 thus, any motions that is submitted would be unauthorized (and returned to you) United States v. Ogbonna, 184 F.3d 447, 449
 & n.1 (5th Cir.1999); 5th Cir. R. 28.6 ("Unless specifically directed by court order, pro se motions, briefs, or other
 correspondence will not be filed by the party represented by counsel.")

 I have diligently pursued my right to appeal. It doesn't seem that I would be asking to much to request an idea of the status, or
 to know which phase of the process I'm in. I have sent you information based on the brief and issues I would like to appeal, I
 haven't heard anything from you or your firm, based on if they are applicable issues, or if they need to be developed.

 was also wondering if a motion for bond goes in now or after the briefing is complete?
 hank you

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

--------------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Barrett, Peter; Bell, Jennifer; Clement, Medgine; Davis, Angela; Gurl, Candy; Lopez, Eileen; Muhammad, Atiya; West, Aisha; Youngblood, Ibn Amiri
SUBJECT: Insufficiency of Evidence
DATE: 08/12/2019 01:49:37 PM


Insufficiency of Evidence

On review of the sufficiency of the evidence, the appellate court must affirm a conviction if after viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. To prove that a defendant aided and abetted a conspiracy, the United States was required to prove that (1) the offense of conspiracy occurred; and (2) the defendant associated himself with the venture participated in it as something he wished to bring about, and sought by his action to make succeed. A defendant's challenging the sufficiency the evidence faces a heavy burden. See United States v. Beidle, 110 F. 3d 1064, 1067 (4th Cir. 1984).

In evaluating the sufficiency of the evidence an appellate court does not weigh the evidence or review the credibility of the witnesses. Where the evidence supports differing reasonable interpretations, the jury will decide which interpretation to believe.

First Superseding Grand Jury transcript Page 8 line 3(Testimony of Agent Adam Gibbons)

Q. And on March 20th, 2013, you've got, for Count 3, Mr. Muhammad charged with actually sending or intending to be distributed AM-2201, which is a scheduled controlled substance. Correct?

A. Right
(Page 8 line 16)

Q. Then again on the next day, on March 21 of 2013 he possessed with the intent to distribute by sending to Ms. Chapman AM2201, which is an actual controlled substance. Correct?
A. Correct.

Count 3 & Count 5 of First Superseding Indictment Dec-9, 2014

The Grand Jury charges:

On about March 20, 2013, in Jackson County, in the Southern Division of the Southern District of Mississippi and elsewhere, the defendant Rasheed Ali Muhammad, aided and abetted by others known and unknown to the Grand Jury, did knowingly and intentionally possess with intent to distribute a detectable amount of 1-(5-Flouropenthyl)-3-(1-naphthoyl)-indole (AM2201), a Schedule I controlled substance.

On about March 21, 2013, in Harrison County, in Southern Division of the Southern District of Mississippi and elsewhere, the defendant, Rasheed Ali Muhammad, aided and abetted by others known and unknown to the Grand Jury, did knowingly and intentionally possess with the intent to distribute a detectable amount of 1-(5-Fluropentyl)-3-(1-naphthoyl)indole (AM2201), a Schedule I control substance.

All in violation of Section 841(a)(1), Title 21, United States Code, and Section 2, Title 18, United States Code

For aiding and abetting, the Government must prove "that the... elements of the substantive offense occurred and that the defendant associated with the criminal venture, purposefully participated in the criminal activity, and sought by his actions to make the venture succeed". United States v. Jimenez, 509 F. 3d 682, 689 (5th Cir. 2007). "The underlying offense of possession with intent to distribute requires the{2011 U.S. App. LEXIS 3} Government to prove that the defendant (1) knowingly (2) possessed cocaine(3) with intent to distribute it." Percel, 553 F. 3d at 911 (quoting United States v. Medina, 161 F. 3d 867, 873 (5th. Cir. 1998)). As for the underlying distribution-of-cocaine offense, "the Government must prove that the defendant (1) knowingly (2) distributed (3) the controlled substance." United States v. Sotelo, 97 F. 3d 782, 789 (5th Cir. 1996).

"To convict a person of a possession with intent to distribute a controlled substance under U.S.C. section 841 (a)(1), the government {2015 U.S. App. LEXIS 17} is required to prove three elements: (1) knowledge; (2) possession; and (3) intent to distribute." United States v. Hernandez, 745 F. 3d 812, 814(11th Cir 2014)(citations and quotations omitted). "All three elements can be proven by either direct or circumstantial evidence." United States v. Poole, 878 F. 2d 1389, 1391-92 (11th Cir. 1989). Possession may be actual or constructive by ownership, dominion, or control over the premises on which the substance is located." Id. at 1392 (citation omitted). Moreover, intent to distribute can be proven circumstantially by ownership from the existence of equipment, such as scales, commonly used in connection with the distribution of drugs. Id.

Constitutional test for sufficiency of the evidence to uphold a conviction: Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), the statements inconsistent with Jackson that have appeared in some Fifth circuit cases must be disavowed. "No evidence" criterion announced in Thompson v. Louisville, 392 US 199, 4L Ed 2d 654, 80 S. Ct. which held a conviction based upon a record wholly devoid of any relevant evidence of an element of the offense charged is unconstitutional, found the record devoid of evidence of premeditation and granted the writ.

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

------------------------------------------------------------------------------------------------------------

Trial transcript testimony of David Edwards (Governments witness Connecticut State Police Officer/State Trooper)
(Page 411 line 13)

Crosby: Q. Now can we agree that the envelopes identified by Government's Exhibits 44, 45, and 46 that made reference to AM2201, that that envelope did not have AM2201 in that envelope?

A. Yeah, the analysis on the white powdery substance inside that envelope, correct, did not indicate that that was AM2201

Q. Okay. So although it said AM2201, it was not AM2201?

A. My understanding from the lab analysis, correct.

(Page 413 trial transcript)

Morgan: Q. G-44. I'm going to hand you what's in evidence as G 45 and 46. Mr. Crosby asked you if these items at the time you seized them, if they had any of those controlled substance analogues in them, like AM2201, and I think you said No. Is that correct?

A. Correct.

United States v. Revels, 190 F. 3d 678, 686 (5th Cir. 1999)(reversing conviction on the basis that "a reasonable trier of fact would see virtually equal circumstantial evidence of incrimination and exonerate, and consequently would entertain a reasonable doubt"); United States v. Penaloza, 473 F. 3d 575, 580-81 (5th Cir. 2006)("[B]ecause the circumstantial evidence equally supports a theory of innocence of the crime charged, we find that it is insufficient to sustain the Jury's verdict of guilty"); United States v. Stewart, 145 F. 3d 273, 277-80 (5th Cir. 1998){2013 U.S. App. LEXIS 7}(reversing conviction where government's arguments required the court to "pile inference on inference").

Trial transcript, testimony of Government's witness Michael Young (Page 608 line 17)

Q. And then you can stuff it in--what were you selling that in?

A. In mylar bags with different names on it.

(Page 608 line 24)

Q. All right. Would you do--would you sell these mylar bags with spice in it to stores or to customers?

A. Yes, stores outside of Connecticut.

(Page 644 line 9)

Q. Do you know a woman by the name of Roslyn Chapman?

A. I don't know her. I heard her name.

(Page 644 line 14)

Q. Did you know whether she was involved in this business?

A. As far as what?

Q. The research chemicals and spice.

A. Well, I know she was a customer. I didn't know what her role was.

Trial transcript Page 609 line 12

Q. How long did that relationship last in that manner?

A. Around December 2012, decided to open up another business.

Q. you did?

A. No, Mr. Muhammad did?

Q. What was the other business?

A. It was going to be for chemicals.

Q. Okay. And that was something you weren't involved in?

A. Well, no, he was going to run that side of the business. I was going to continue to run the other business.

Q. Okay. So I'm clear, the other business would be the spice, and his would be the research chemicals, or how did that break down?

A. Yes, his was going to be more the stuff other people were looking for, like the methylones, the 4-mec and things like that

Trial transcript Page 647

Q. So some of it might have been from that, but a lot of it was from the spice business?

A. Correct

Q. And at the time that you were first arrested, you gave a statement and you said the chemicals were I think you said Molly, methylone, AM2201, a-PVP, right?

A. Right

Q. And you knew that those were the chemicals in there?

A. Yes.

TRULINCS  18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

---------------------------------------------------------------------------------------------------

Trial transcript Page 656 line 11
    Q. Now, you kept the original things that you were selling, and he went with different things,
right?
    A. Yes

"An appellate court's reversal of a conviction on grounds of insufficiency of evidence should be 'confined to cases where the prosecution's failure {2005 U.S. App. Lexis 9} is clear'" United States v. Jones, 735 F. 2d 785, 791 (4th Cir. 1984)(quoting Burks v. United States, 437 U.S. 1, 17, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978)). In reviewing a sufficiency challenge "the verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it." Glasser v. United States, 315 U.S. 60, 80, 86 L. Ed. 680, 62 S. Ct. 457 (1942).

Grand Jury transcripts testimony of Adam Gibbons Page 4 line 2 (December 9, 2014)
    Q. And he lived where
    A. He lived in Bridgeport, Connecticut
    (Trial testimony of Adam Gibbons Page 172 line 4)
    Q. Was she living with him in Shelton in August 2003?
    A. Yes
Trial transcripts testimony of David Edwards Page 348
    Q. And where were you located when you came into contact with him, the physical address
    A. It was 117 Oak Avenue, Shelton, Connecticut
Trial transcripts testimony of Michael Young Page 611 line 12
    Q. Shelton is how far from Bridgeport?
    A. Probably about ten minutes.
    Q. But any rate, he was doing his thing in Shelton, and you were doing your thing in Bridgeport
    A. Correct.

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

--------------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Barrett, Peter; Bell, Jennifer; Clement, Medgine; Davis, Angela; Gurl, Candy; Lopez, Eileen; West, Aisha; Youngblood, Ibn Amiri
SUBJECT: Insufficiency of evidence 2(multiple conspiracies)
DATE: 08/12/2019 01:50:31 PM


Trial transcript of Roslyn Chapman Page 329 line 7

Mr. Meynardie: Q. So when you went to jail from Ocean Springs, at that point you were aware that this stuff was illegal?
A. I'm going to-- I still wasn't aware if it was illegal because, as you know, when I got arrested they sent all substances that I had off to the lab, and I never got the results from that lab. So I do take back the statement that I knew they were illegal at that point. I didn't because I had never got a confirmation whether they were illegal or not.

Trial transcript of Roslyn Chapman Page 333 line 2

Mr. Meynardie: Q. And yet at the same time, in August of 2014, when you sat down with these DEA agents, you said the exact opposite thing, that you knew it was illegal? When you were selling it, you knew it was illegal, and now you are changing your testimony; is that right?
(Page 335 line 24)
Mr. Meynardie: Q. Ms. Chapman, I think the question was fairly clear. The time frame in which you were involved in this was, according to your own testimony December of 2012, through August of 2013. And unless I'm completely mishearing you, what you have testified to on cross-examination and now with me on redirect is that at no time during that time frame were you aware that these were illegal drugs. Is that what you are testifying to?
A. I pled guilty to having illegal substances. However, I told you all on multiple occasions that I thought that throughout those months that I was staying ahead of the scheduled drug. Both of those are true. Yes, I pled guilty. I knew I was guilty when I got arrested and went to jail. However, I did think throughout these months that what I-- he actual chemicals that I was staying above regularly schedule drug chemicals. So hey are both true.

Trial testimony Page 441 line 2

Mr. Crosby: We can never clear up that Mr. Meynardie stated a fact that was not--it was not correct that they have an official report prepared that states that she was lying in her testimony. And it's important to point out that the interview, of course, would be the DEA, and at a time subsequent, which makes it appear that she had plenty of time to make-- to converse about that subject and plenty of time to state whether or not she thought it was illegal at the time. And I think it's really important in that it sets out why-- I mean, it illustrates that the prosecutor has basically put his credibility stamp on the most material ssue in this case before the jury. And he's argued with that witness to the effect that there is nothing I can do with her to clarify that.
And it was-- you know, I think the fact that they didn't prepare that report--I mean, hat statement is so important, for it not to be in the report is significant in many ways.
But the case I was referring to is Mickell versus State that sets out the argument, and of course it relies on constitutional principle, 725 S. 2d 1031. So it's the kind of prejudice that you just can't undo in the case. I mean, it happened. and no matter how much interview her or whatever I do, I cannot undo that.

To determine whether a single conspiracy or multiple conspiracies have been proven, the following test has been employed: A single conspiracy can only be demonstrated by proof that an overall operation existed among the conspirators. Furthermore, he evidence must show that each defendant knew, or had reason to know, that his benefits were probably dependant upon the success of the entire operation. Typically, the inference of an overall agreements drawn from proof of a single objective... or from proof that the key participants and the method of operation remained constant throughout the conspiracy. The inference

TRULINCS  18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

---

that a defendant had reason to believe that his benefits were dependant upon the success of the entire venture may be drawn from proof that the coconspirators knew of each other's participation or actually benefitted from the activities of his coconspirators. Id. (quoting United States v. Dunn, 189 F. 3d 1071, 1080 (9th. Cir 1999). "[I]f the indictment alleges a single conspiracy, but the evidence at trial establishes only that there were multiple unrelated conspiracies, there is insufficient evidence to support the conviction on the crime charged, and {2019 U.S. App. LEXIS 44} the affected conviction must be reversed." Id. at 1226-27. Nonetheless, "[a] single conspiracy may involve several sub agreements or subgroups of conspiracies." United States v. Bibbero, 749 F. 2d 581, 587 (9th Cir. 1984).

Trial transcript testimony of Adam Gibbons Page 151 line 12

Q. At that time, were you under the impression that that e-mail account might be associated with the defendant?
A. At that time, I believed it to belong to Rasheed Ali Muhammad because of the similar name, and one of the IP addresses hit in Bridgeport, Connecticut. I later learned later through the investigation that that was in fact false.

Trial transcript testimony of Adam Gibbons Page 154 line 18

Q. All right. And then the one on Joe Boyd, what is the order for there?
A. That's ten grams of AM2201 and ten grams of a-PVP. And the significance of this later on realized that Joe Boyd is a repeat customer, and we actually acquire the labels and the shipping documents to Mr. Boyd.
Q. But at any rate, Jay Johnson and Roslyn is asking this Mohammed Posser to send the drugs to this individual; is that correct?
A. Yes, sir.

Agent Adam Gibbons testified to the Grand Jury that on each occasion that Ms. Chapman sold or distributed or possessed with the intent to distribute these controlled substances, she had received those from Mr. Muhammad. The e-mails, the government, and the government witnesses has proved otherwise. Agent "Gibbons" admitted to getting it wrong in the beginning, he also mentioned that the similarity of the name Muhammad proved him to be false. The government witness Michael Young stated that Roslyn Chapman was a customer of his. Roslyn Chapman may have been involved in multiple conspiracies, however, none of which involved the defendant. There was no circumstantial evidence, direct evidence, or any other form of evidence that clearly states that Roslyn Chapman ever received AM2201 from the defendant on any occasion. Michael Young stated in December of 2012 he had taken over that part of the business and Rasheed Muhammad had gone on to sell chemicals only. AM2201 is a canibinoid. When agents came to Muhammad's home in Shelton, Connecticut there was no AM2201 found, their was no mylar bags to package spice, nor was their any green leafy material (damiana) to make the drugs that Roslyn Chapman had on March 20th and 21st of 2013.
The relationship with Mohammed Posser and Roslyn Chapman is clear. From Ms. Chapman ordering "cola", "spice", and "purple flowers". The agents contacted Connecticut Police agencies, they discovered Rasheed Ali Muhammad was arrested for synthetic drugs and agent "Gibbons" assumed it was the correct Muhammad and launched and investigation, getting warrants and arrest warrants issued based on the conduct of Roslyn Chapman and Mohammed Posser alleged conspiracy. Roslyn Chapman stated on cross examination whatever she needed she could get from Mohammed Posser.
The government wanted to prove the box that Roslyn Chapman had the drugs in came from the defendant, Ms. Chapman, however, stated those drugs didn't come in that box, those drugs were just sitting in the box. The government said the defendant used a FedEx account, however, the government witness Michael Young stated he used FedEx.

Trial transcript Page 239 line 21

Q. If you will recall earlier, we talked about the account, the FedEx account itself was registered by and registered to whom?
A. Rasheed A. Muhammad
(Page 240 line 17 (about questioning Michael Young))
Q. Did you interview him about or ask him questions about these Fed Ex labels that his name was on it?
A. Yes, sir.
Q. What did he tell you?
A. They were using fictitious names
Q. And many of the ones that say M. Young were not him at all
A. Correct

TRULINCS  18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

--------------------------------------------------------------------------------------------------

Trial testimony of Michael Young (Page 603 line 19)

Q. What--of the major services, post office, UPS and Fed Ex, what service was he using at
that time.

A. UPS
Q. Primarily UPS?
A. Yes

Trial testimony of Michael Young (Page 619 line 13)

Q. You were using Federal Express, correct?
A. Correct.

"No evidence" criterion announced in Thompson v. Louisville, 392 U.S. 199, 4L Ed. 2d 654, 80 S. Ct., which held that a conviction based upon a record wholly devoid of any relevant evidence of an element of the offense charged is unconstitutional, found the record devoid of evidence of premeditation and granted the writ.

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

----------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Barrett, Peter; Bell, Jennifer; Davis, Angela; Gurl, Candy; Lopez, Eileen; West, Aisha
SUBJECT: Insufficiency of Evidence (3) Rule 29
DATE: 08/14/2019 10:04:50 AM


### Motion for Judgment of Acquittal

Sentencing transcript Page 720 line 22: Now, turning to the motion before the Court, under Federal Rule of Criminal Procedure 29, "A motion for judgment of acquittal shall be granted for any offense for which the evidence is insufficient to sustain a conviction. In resolving the motion, the Court should not assess the credibility of witnesses, weigh the evidence or draw inferences of fact from the evidence. The role of the Court is simply to decide whether the evidence viewed in the light most favorable to the government is sufficient for any rational trier of fact to find guilt beyond a reasonable double."
Turning to the evidence in this case, there's evidence, including web sites, e-mails attributed to Mr. Muhammad, letters. including testimony of witnesses, from Ms. Chapman, if the jury chooses to believe her--they may not choose to believe her, but a rational jury could choose to believe what she had to say about her involvement with Mr. Muhammad in the light most favorable to the government-- Mr. Young, Mr. Wilkes, plus the testimony of the experts who established the chemical makeup of these drugs and established--if the jury chooses to believe them, the evidence would be sufficient for the jury to conclude that these were controlled substance analogues. There's evidence of agreement, evidence of overt acts, evidence of the drugs themselves.

Of the 5 controlled substance analogue counts, the jury acquitted the defendant of two of the counts. Count 2 on about March 20, 2013 in Jackson County, possess with intent to distribute a detectable amount of 1-5(5-Fluropentyl)-3-(2,2,3,3-tetramethylcyclopropoyl)indole (XLR11), a controlled substance analogue as defined in Title 21, United States Code, Section 302(32), with intent for human consumption as provided in Title 21, United States Code 813, and Count 8 on about March 21, 2013, in Harrison County of the same elements.

Sentencing transcript Page 721 line 18: So viewing the evidence in the light most favorable to the government, in the Court's view there is more than sufficient evidence for a rational trier of fact, if it believes that evidence, to find guilt beyond a reasonable doubt as to all counts charged in the indictment. So for that reason, the motion will be denied.

The Court never presented adequate evidence the controlled substance counts of 3 & 5 should not be acquitted. The government never presented trial evidence (in viewing Volumes I through V of the trial transcripts, exhibits, and the PSR) of Roslyn Demetris Chapman being aided and abetted, by defendant, or the defendant possessing with intent to distribute a detectable amount of 1-(5-Fluoropentyl)-3-(1-naphthoyl)indole (AM2201). The record is devoid of evidence pointing to the defendants guilt. Agent Adam Gibbons admitted he thought the defendant was Mohammed Posser the individual who was sending Roslyn Chapman the spice. The governments witness Michael Young stated the defendant sold chemicals as of December 2012 and that he sold spice. Michael Young also stated that Roslyn Chapman was a customer of his. He had the green leafy substance, the mylar bags, and the additional products (Cola) that was found in Roslyn Chapman's car on March 20, 2013, and storage room on March 21, 2013. This is clear and obvious. A detectable amount of AM2201 was found in the mixture of the spice.
Viewing the evidence in the light most favorable to the government, a reasonable jury could not find that the evidence established defendant's guilt beyond a reasonable doubt under the original, and/or the first superseding indictment. The district court erred in denying defendant's motion for judgment of acquittal for aiding and abetting the possession with the intent to distribute a detectable amount of AM2201. Due process requires the government to present evidence sufficient to prove each element of a criminal offense beyond a reasonable doubt, see Jackson v. Virginia, 443 U.S. 307, 316, 99, S. Ct. 2781, 61 L. Ed. 2d 560 (1979)

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

--------------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Barrett, Peter; Bell, Jennifer; Muhammad, Atiya; Ramirez, Maggie; West, Aisha; Youngblood, Ibn Amiri
SUBJECT: Direct Appeal Re: Rasheed Ali Muhammad
DATE: 08/26/2019 09:47:59 AM

May Peace Be Upon You,

  Attorney Peter Hickman Barrett,

  I have sent emails for the past few months, you replied to one. I have sent various letters, transcripts, information about my case, issues I wanted to pursue in this appeal, and the interest to speak with you or additional staff members. We have very limited information where I am so I'm not abreast about all of your appeals in Federal court, however, I do not want to happen to me what has happened to any of the following that the P. & W. Barrett firm has represented on appeal:

Aug. 4, 2016   United States v. Kiel  (Peter & Susan Barrett)
Jun. 7, 2016   United States v. Aaron Grant Willis
Jul. 28, 2016   United States v. Sinha (Peter & Susan Barrett)
Jul. 22, 2015   United States v. Jones
Oct. 23, 2015  United States v. Calvin Louis Smith (William Carl Barrett)
Sep. 9, 2015   United States v. Helen Page
Nov. 24, 2014  United States v. Sinha (Peter & Susan)
Sep. 23 2014   United States v. Kiel
Jun. 19, 2013  United Sates v. William Wayne Rogers
Nov. 6, 2012   United States v. Lee Earl Brooks
Aug. 1, 2012   United States v. Hollis (William Carl Barrett)
Jun. 9, 2011 United Sates v. Rogers  (William Carl Barrett)

  I have worked really hard to get where I am. In trial my case was not presented the way I asked my attorney to present it. The indictment was not based on anything that I did. My indictment should have been dismissed. The PSR further demonstrates that the conduct was not mine. I sold chemicals for a living. I did not sell chemicals to the people in my case. each of them had their own businesses. We worked independently of one another.

  Most lawyers do not know enough about Controlled Substance Analogues because it is all new. The prosecutors also admitted they don't know about them but hopes that the jury does. I haven't received a business card from you, a letter, or your intent to take this case. I have received a letter from the court stating that an electronic memo has been posted, however, they don't have your appearance.

  I would like to win all counts. I can win all counts. I would like a Motion for Bond Pending Appeal. Please let me know or my family know if you intend to go forward with this appeal. Please let us know if it is in my best interest to retain additional counsel. The way you communicate with me is not working for me, and it's extremely scary. It has taken me three years to get where I am. I should have had a direct appeal three years ago. There was no communication then and there is none now. Please let me know how I should proceed. I have never had an attorney that doesn't communicate on any level.

Thank you,

TRULINCS  18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

--------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Bell, Jennifer
SUBJECT: Calling the attorney
DATE: 08/29/2019 07:08:51 PM


as salaam alaikum

duchess,

when you have the energy and time
will you please contact the attorney and ask when is it to late to submit the Motion for bond pending appeal
f he doesn't have an answer by Monday, I'm going to have to contact the Courts and let them know that he hasn't been in touch
with me, has not responded to any of the letters, or emails.

There is a case called Strickland....there are prongs that constitute ineffective assistance of counsel, however, the Courts very
rarely rule in favor of the Petitioner based on the prongs of the ineffective assistance of counsel rule. If the time expires on the
Motion for Immediate release (it's sometimes called) I will have to sit here for at least another two years.

The worst case scenarion in my case is the AM2201. I already did enough time as the maximum time for that charge. I'll wait..
but by next week I'll have to submit something... They are about to send him a briefing schedule.

Thanks for everything

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

------------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Bell, Akilah; Bell, Jennifer; Clement, Kenneth; Clement, Medgine; Davis, Angela; Davis, Ashley; Lopez, Eileen; Muhammad, Atiya; Muhammad, Layla; Ramirez, Maggie; Richardson, Deserie; Rogers, Jihad; Silas, Audrey; West, Aisha; Wiggins, Lannay; Youngblood, Ibn Amiri
SUBJECT: I need help (please)
DATE: 09/09/2019 07:17:27 AM


May Peace Be Upon You,

I need your help now, and this day
I thought I would have been out of here by now

I have a very simple case
my sentence and charges are unconstitutional
it was ruled so in 2015

I need you to Google an attorney:  Pete Hickman Barrett in Gulfport Mississippi
please contact him and ask him if he intends on filing my motion for bond pending appeal
please ask him why he has not contacted me
ask him why he has never sent him a letter, an email, or phone call
ask him where is he in this case
and why he has not consulted with me

I need you to call right now

I am going to do my part
I wrote the courts last week, however, they sent the motion to the attorney
I knew they would do that because that would have been what is called hybrid representation
(when a defendant has an attorney of record that person cannot file motions)

I am going to request additional counsel
I am going to make a copy of all the emails I sent
all the letters that you all have sent, those that I have a copy of

I was told some months ago maybe he's on vacation...maybe this maybe that
have patience.  I have patience, however, they have been exhausted

I'm involved with a system that requires diligence, perseverance, and constancy
I am going to win
I want to win NOW
I should have been out of here a month or two ago

If the motion gets filed the courts will have no problem releasing me
I have met all the requirements
I will win all my counts of conviction
I have proved my case
I have told these people I could have won in trial
everyone from the outside who has looked at my case has said that I would win
I am being held illegally
they know this
the prosecutor has already admitted and conceded that I will win

They have conceded to getting it wrong
they said I was Mohammed Posser I am not him
everything that they charged me with is based on someone else

thank you

TRULINCS 18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

----------------------------------------------------------------------------------------------------

FROM: 18035043
TO: Barrett, Peter; Bell, Akilah; Bell, Jennifer; Clement, Kenneth; Clement, Medgine; Davis, Angela; Davis, Ashley; Lopez, Eileen; Muhammad, Atiya; Muhammad, Layla; Ramirez, Maggie; West, Aisha; Youngblood, Ibn Amiri
SUBJECT: Jury Instructions
DATE: 09/10/2019 08:06:32 AM


Good Morning,

  Attorney Petter Hickman Barrett,

  I'm not certain what was said in the conversation with my mother. She mentioned something about either you, the Courts, or the files does not contain the jury instructions or they can not be found. There was an email on December 30, 2014 sent to the courts or to the prosecutors office of what the jury instructions were. Please refer to pages 712 through 721 (I believe that concerns the motion for acquittal Rule 29).

  From pages 829-932 talks about how the jury was ordered to rule etc... Whatever the case if you have them go back to Dec. 20, 2014 that's the date the instructions were mailed back and forth.

  My first request to you was that you contact other attorneys of clients that have a case similar to mine. On that email from the 5th Circuit it included, Barry Bays defended by Lydia M. Brandt, Esq. from the Brandt Law Firm PC in Farmville, TX. I included information about Jerad Coleman defended by Attorney Scott Miller Anderson of Dallas TX. A case from Covington, LA Daniel James Stanford defended by Robin Elise Schulberg. In the 4th Circuit Charles Burton Ritchie defended by J. Lloyd Snook III from Snook & Haughey PC in Charlottesville Va.

  After that I asked you to file a Motion for Bond pending appeal. What does that have to do with jury instructions. I also sent you all the information relating to the jury instructions from the trial transcripts. Please let me know if you intend to file the Motion for Bond or not that is the most important issue for me at this moment. Everything else I can deal with when it arrives. I would also like to know if the Courts issued you a briefing date.

  In closing please send me an email describing what someone has said to me that was wrong. I have a letter from Crosby that was sent to prosecutor (AUSA) Meynardie and he agreed that the Conspiracy Count 1 and the Counts with the controlled substance analogue should be vacated. They gave the improper jury instruction based on the knowledge requirement. Please read the Supreme Court Case of McFadden concerning analogues and the knowledge requirement also contact the lawyers above so you may have a clearer understanding of what's going on. If you feel after speaking with them that I have somehow been mislead, misinformed, lead astray, run amuck, please at that point let me Rasheed Ali Muhammad know directly. And I don't like or appreciate the fact that I have to go through a third party to speak to you. There are rules in the American Bar Association that an attorney must uphold to with a client. You have been on this case for more than 3 months and I haven't spoken to you, received an email from you or a phone call. This is not acceptable

  In order to contact me here at Allenwood please ask to speak to a counselor by the name of Maronie.

hank you

---

1994(, and United States v. Ortiz, 318 F. 3d 1030, 1036 (11th Cir. 1994). "[I]f the evidence viewed in the light most favorable to the prosecution gives equal circumstantial support to a theory of innocence of the crime charged, then a reasonable jury must necessarily entertain a reasonable doubt." Cosby v. Jones, 682 F. 2d 1373, 1383 (11th Cir. 1982)

So far in this appeal the courts have not been playing by the rules. It's three years later and I'm just getting a direct appeal. I need help, and so far I have not received it. If you decide that you are going to continue to proceed on this case in the same manner that you have over the course of the past 3 months will you please let the courts know this is not an appointment that you wish to proceed on.

I need help. I need an attorney that is going to work with me. I explained this to you before. I explained this to the trial attorney. paid all fees in advance. I have hired attorneys on my post conviction who took my money and never did anything. Before someone messes me up I would appreciate for them to get off my case and allow me to handle things myself. So far this has not been effective counseling. In three months we have never spoke to each other. You sent one email in response to an email that I sent you the first time. This is not good enough for me.

Will you please let me know why you have not filed the Motion for Bond. Anything a pro se defendant submits will be considered hybrid representation.

In closing I need your opinion on what issues can be raised on appeal so that I can work on those issues. I already sent you various emails on the issues I would like to appeal. The issue now seems to be the government can't locate the Jury Instructions

On page 712 line 13 of the trial transcripts it says:

Mr. Crosby: I e-mailed a list of jury instructions, the pattern instructions, the ones that we intended to use, he jury instructions straight from the Court. At our pretrial conference, Your Honor said that you-- I believe you said something o the effect that you typically go by the federal pattern jury instructions, so we identified the ones we intended to use in our e-mail. Page 13 line 10 Mr. Crosby: Okay. But from the government's instructions, first instructions, and this is why I made reference to that, their first instructions I believe accurately set forth the instructions. I have received a supplemental set of instructions that appear on my table, which I presume is from the government, and their instructions, on number three, where it says first then second—on the second page where it says first and second, it says -- well, here's the elements. It says, "First, the defendant knew that the substance at issue was intended for human consumption; and, second, the defendant knew that the substance at issue was a-PVP," and it's got a list of substances. And then the second sentence says, "The defendant need not have known that the substance at issue was an analogue, only that he knew that the substance was an analogue, only that he knew what the substance was and that he possessed it or conspired to possess it with the intent to distribute it."

If someone is telling my mother Jennifer Jendiya Bell that her son Rasheed Ali Muhammad has harmless error concerning the elements of his case and the Supreme Court ruling of McFadden concerning the required proof then this is ineffective. I have a DEAD BANG WINNER" issue. If someone has told my mother that the government can not find the jury instructions then ask me for a copy so I can get it to them. I have already sent all of these transcripts to you. Please read them.

In light of McFadden, the jury was not properly instructed on the element of knowledge. That was error. I have preserved this, ℔'s also on the record. In one of the packages I have sent this to you as well. In Bays the Government explicitly declined to argue that the error was harmless as to Coleman ( I have sent you this case and also asked you to contact those attorneys). For error to be harmless, the court must conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error. See Stanford, 823 F. 2d at 828. We do not take the place of "a second jury to determine whether the defendant 5 guilty," but rather ask "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." See Neder, 527 U.S. at 19.

You really need to look at the Stanford case, and contact Attorney Robin Elise Schulberg. She retired a couple years ago, or at least is in the process of trying to retire and she can offer you a wealth of helpful information. The only advice I have listened to s the advice of all the lawyers I have asked you to contact. My mother stated as well that someone is offering me false information or something to that effect. I will try to write the court of appeals today to get some clarity on this issue of the government not having the jury instructions. I do not wish to delay or hold this Honorable Court up in no way possible, and the government should feel the same way. Give me a few days and I will get this ball back on track.

TRULINCS  18035043 - MUHAMMAD, RASHEED ALI - Unit: ALP-A-A

--------------------------------------------------------------------------------

FROM: West, Aisha
TO: 18035043
SUBJECT: Esme
DATE: 07/05/2018 10:51:02 AM

Here is the email she sent me regarding this:
Hi Aisha, I've been plugging along with my story and reading over your brother's case documents, and I wanted to flag
something that just came up. I just emailed Rasheed about this too:

I'm very confused by something I just discovered in his case file: email correspondence between the email account
legal.high@yahoo.com (which prosecutors link to him) and William Zhou aka Xiaobing Yan (the dealer in China now being
indicted by the US Atty's office in MS for selling fentanyl and other drugs) that takes place during the months of May, June and
July of 2014. As far as I can tell, he would have been in jail during this time (I show him having been sentenced to five years in
CT prison for forgery on 2/19/14, in Enfield Correctional Institution on 4/22/14 when a warrant was issued for his arrest, arrested
on 6/27/14 and in federal custody as of 7/7/14). So how could it have been him sending these emails? That seems like a major
problem for the government's case against him! The emails from that time period show Yan sending various chemicals to
someone named RMG at 929 White Plains Rd. #406 Trumbull, CT, and the wire transfer coming from Michael Young. Do you
know if RMG is Michael Young? Or someone else?

1    form or the jury instructions?

2            MR. CROSBY:  We do not have an objection to the

3    verdict form.

4            THE COURT:  All right.

5            MR. CROSBY:  Now, with respect to the instructions,

6    we are -- we do object to -- I want to make sure I've got my

7    numbers right.  Instruction Number 22 does not require the

8    government to prove that the defendant -- prove beyond a

9    reasonable doubt that the defendant intentionally possessed an

10   analogue, meaning that it was substantially similar and as

11   defined by the statute.  It is our position that the government

12   must prove beyond a reasonable doubt that Rasheed did in fact

13   know it was an analogue.

14       We recognize that there was a split in the circuits on

15   that, but I did attempt to distinguish the Fifth Circuit cases

16   in that in those cases it was a different drug that was in a

17   different stage of being considered an analogue.  Those

18   defendants in that case had specific knowledge that the DEA had

19   made efforts to ban the chemical at issue in their case, I

20   think two failed efforts.  And the evidence was different in

21   that case because Rasheed did not know any such thing.

22       And therefore, we would submit that as applied to this

23   case, that the statute is unconstitutionally vague, and that --

24   not only vague, but it's unconstitutional by its application.

25   While a statute can be constitutional, if it is applied in a

1  certain way, it can make it unconstitutional.  And then the
2  reciprocal is the same, that a statute could be, in theory,
3  unconstitutional, but if corrected by its application to the
4  particular defendant, it could be made constitutional.  And we
5  would submit that to the extent that there are any cases in
6  authority that hold otherwise, that we would submit that it was
7  because of the particular facts of that case.

8      Now, I identified instruction 22, but to the extent that
9  any other instruction conflicts with what I just said regarding
10  that intent, we would object to those for the same reason.

11      Now, a second thing that we are objecting to is that the
12  word -- is that the -- I'm sorry.  In addition to what I just
13  said about the requirements and the split of authority, we
14  would further submit that in this case, the indictment actually
15  indicts the defendant in a way that would require the
16  government to prove the material element that he had -- beyond
17  a reasonable doubt that he had knowledge that it was in fact an
18  analogue.  We would submit that the indictment, the way it is
19  worded with respect to all counts, make it specific to this
20  defendant and does require that element.

21      Now, as many prosecutors and courts will note, that a
22  statute may not require such thing or such things to be proven.
23  Regardless of whether a statute requires something, if the
24  Grand Jury indicted a defendant a certain way, then I
25  respectfully submit that they must prove what is set forth in

1   defendant of possession of a controlled substance analogue with
2   intent to distribute, the jury was required to find that the
3   defendant possessed mephedrone, a controlled substance
4   analogue; second, that the defendant knew he was in possession
5   of a controlled substance analogue; and third, that the
6   defendant intended to distribute some or all of the controlled
7   substance analogue for human consumption.

8        There's also a Seventh Circuit case from 19 -- sorry, from
9   2005, *United States versus Turcotte*, which appears to follow
10  the same approach as the Eighth Circuit.  However, it is of
11  note to the Court that that case, the Seventh Circuit case, is
12  cited in a more recent case out of the Fourth Circuit, *United*
13  *States versus McFadden*, 753 F.3d 432.  This was decided May 21,
14  2014.  And in that case, at or about page 444 of the opinion,
15  the defendant there was claiming, based on out of circuit, out
16  of Fourth Circuit precedent, relying on the Seventh Circuit
17  case of *Turcotte*, that the district court erred in refusing to
18  instruct the jury that the government was required to prove
19  that he knew or had a strong suspicion or deliberately avoided
20  knowledge that the alleged controlled substance analogues he
21  possessed -- or possessed the characteristics of controlled
22  substance analogues.  So the Fourth Circuit reviewed that
23  assignment of error on the district court's jury instruction.

24       According to the Fourth Circuit, the defendant's argument
25  failed because the instruction he proposed was not a correct

1  statement of the law in the Fourth Circuit.

2       The Fourth Circuit went on to state that the Controlled

3  Substances Analogue Act may be applied to a defendant who lacks

4  actual notice that the substance at issue could be a controlled

5  substance analogue.   In contrast to Fourth Circuit precedent,

6  this *McFadden* case acknowledges that the Seventh Circuit has

7  imposed a strict knowledge requirement before a defendant may

8  be convicted of violating the act.   Indeed, in the *Turcotte*

9  case, the Seventh Circuit stated that our precedents demand a

10  showing that the defendant knew the substance in question was a

11  controlled substance analogue, but the Fourth Circuit then

12  stated we have not imposed such a knowledge requirement and

13  have not included the concepts of strong suspicion or

14  deliberate avoidance in framing the scienter requirement.

15  Therefore, the jury instruction in the lower court in *McFadden*

16  was upheld.   And the Fourth Circuit's approach is in accord

17  with the current state of the law in the Fifth Circuit, which

18  does not take the scienter requirement approach that the

19  Seventh Circuit appears to take.

20       So I would also observe that I have also considered a

21  Fifth Circuit case, *United States versus Gamez-Gonzalez,* 319

22  F.3d 695 of 2003, which was not a controlled substance analogue

23  case.   It was a controlled substance case.   And although that

24  case says the government must prove beyond a reasonable doubt

25  that the defendant knew he possessed a controlled substance but

1    experiment on humans, but we are getting reports from the

2    field.  And where are we getting them from?  We are getting it

3    from law enforcement who are getting this stuff out of the

4    field, who are arresting people who are either stimulated on

5    the stuff or hallucinogened on this stuff.  We are getting it

6    from emergency rooms where people are having to report because

7    of the dangerous nature of these, and we are getting them from

8    autopsies from people who have used this stuff and have died.

9    This is not a game.  This is dangerous stuff these people are

10   playing with.

11       All right.  Let me talk a little bit about the jury

12   instructions you heard earlier before I get into the meat of

13   the case, because it is fairly important, and I think there was

14   some confusion about what perhaps the knowledge -- what the

15   defendant has to know about the substances in order for him to

16   be guilty of it.  There wasn't any confusion from the Court,

17   and I don't think any from us, but it's specifically in

18   Instruction Number 22, and I want you to pay attention to what

19   we have to prove for knowledge of these controlled substance

20   analogue acts -- substances.

21       We have to prove first that the defendant knew that the

22   substance at issue was intended for human consumption.  We've

23   talked about that.  Then we have to prove that Rasheed Ali

24   Muhammad knew that the substance was a-PVP, XLR11 or 4-MEC.  He

25   had to know that that's what the substances were.

1        And in the case of 4-MEC and a-PVP, I think he admitted

2   that when he admitted that the substances that were in his

3   closet that day were a-PVP, 4-MEC and methylone, which is a

4   controlled substance.  I think he denied all along any

5   knowledge of XLR11.  I never played with that stuff, but we

6   will see later that that's not necessarily true.

7        The defendant need not have known that it was an analogue,

8   that is, that it was illegal.  What he needs to know is that

9   that's what the product was, and the product had to have been

10  illegal.  Now, if you think about that, that's exactly the way

11  every other controlled substance is treated.  For cocaine, it

12  is not a defense for you to come in and say, *I had cocaine, but*

13  *I didn't know it was a controlled substance.*  Ignorance of the

14  law is no excuse.  If it was a controlled substance, and if he

15  possessed it, that is what the knowledge requirement is.  He

16  has to know what the product is.  That's the knowledge

17  requirement, not that he knew that it was on a schedule or not

18  on a schedule or an analogue or not on an analogue.

19       Now, moving along quickly to Instruction 23, which has to

20  do with conspiracy, and I want to talk about that very briefly.

21  A conspiracy -- I think the instruction is fairly clear.  A

22  conspiracy is essentially an agreement.  We all have agreements

23  every day.  We go to the Winn-Dixie and we buy some milk, and

24  we agree to pay them money, and they give us milk.  We all have

25  these agreements.

# *United States Court of Appeals*
## FIFTH CIRCUIT
## OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

August 22, 2019

#18035-043
Mr. Rasheed Ali Muhammad
USP Allenwood
P.O. Box 3000
White Deer, PA 17887-3000

No. 15-60300   USA v. Rasheed Muhammad
USDC No. 1:14-CR-36-2

Dear Mr. Muhammad,

We will take no action on your motion for bond pending appeal.
Only your attorney can file motions or other documents on your
behalf.   Your motion is being forwarded to your attorney for
whatever action he deems necessary.

Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Allison G. Lopez, Deputy Clerk
504-310-7702

cc:  Mr. Peter Hickman Barrett
Mr. Gaines H. Cleveland
Mr. John Arthur Meynardie